**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER KOBOR, individually and on behalf of all others similarly situated, | Case No. 1:23-CV-01392-MAD-DJS |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| SKIDMORE COLLEGE, | |
| Defendant. | |
| MARY COGAN, individually and on behalf of all others similarly situated, | Case No. 1:23-CV-01409-MAD-DJS |
| Plaintiff, | |
| v. | |
| SKIDMORE COLLEGE, | |
| Defendant. | |

4880-5990-9842.2

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.    CASE SUMMARY .................................................................................... 2

    A.    The Data Breach .......................................................................... 2

    B.    Procedural Posture ....................................................................... 3

    C.    History of Negotiations ................................................................ 3

III.    SUMMARY OF SETTLEMENT ............................................................. 4

    A.    Settlement Class ........................................................................... 4

    B.    The Settlement Benefits ............................................................... 5

        1.    Out of Pocket Expenses and Lost Time Reimbursement ........................ 5

        2.    Credit Monitoring and Identity Protection ................................. 5

    C.    Defendant's Payment of Notice and Administrative Costs ................. 6

        1.    Notice Plan .......................................................................... 6

        2.    Claims, Objections, and Requests for Exclusion ...................... 7

    D.    Attorneys' Fees, Costs, and Service Awards ............................... 8

IV.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
PRELIMINARY APPROVAL ................................................................ 8

    A.    The Preliminary Approval Legal Standard ................................. 8

    B.    The Settlement Is Procedurally Fair ......................................... 10

    C.    The Settlement is Substantively Fair ........................................ 11

        1.    The complexity, expense, and likely duration of litigation. ................. 11

        2.    The reaction of the class to the settlement. ............................... 13

        3.    The stage of the proceedings and the amount of discovery
completed. ....................................................................... 13

        4.    The risks of establishing liability and damages. ...................... 14

        5.    The risk of maintaining class action status through trial. ................ 15

        6.    The ability of Defendant to withstand greater judgment. ................ 15

        7.    The range of reasonableness of the Settlement considering the best
possible recovery and attendant risks of litigation. ................. 16

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ........................... 17

    A.    The Requirements of Rule 23(a) Are Satisfied ........................... 17

        1.    Numerosity ...................................................................... 17

        2.    Commonality ................................................................... 18

3.    Typicality ................................................................................... 19

4.    Adequacy of representation ........................................................ 19

D.    The Requirements of Rule 23(b)(3) Are Satisfied ................................ 21

1.    Common legal and factual questions predominate in this action. ........... 21

2.    A class action is the superior means to adjudicate Plaintiffs' claims. ................................................................................ 22

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ................... 23

VII.    CONCLUSION .................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................... 21

*Banyai v. Mazur*,
  No. 00-cv-9806-SHS, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ........................................ 14

*Bodon v. Domino's Pizza, LLC*,
  2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ............................................................. 16

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013) ...................................................................... 9, 11, 20

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) ....................................................................... 17

*Cotter v. Checkers Drive-In Restaurants, Inc.*,
  2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ........................................................... 23

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ............................................................................ 10

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................... 11, 13, 16

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................... 11

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F.Supp.3d 290 (E.D.N.Y 2015) ..................................................................... 14

*Fogarazzo v. Lehman Bros., Inc.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ....................................................................... 19

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................... 15

*Hadel v. Gaucho LLC*,
  No. 15-cv-3706-RLE, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ...................................... 9

*Hall v. ProSource Techs., LLC*,
  2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ........................................................... 10

*Handschu v. Special Services Div.*,
  787 F.2d 828 (2d Cir. 1986) .......................................................................... 24

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*.,
 2019 WL 3183651 (D. Md. July 15, 2019) ........................................................................ 18

*In re Agent Orange Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).................................. 16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012) ............................................................................................ 17

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018)....................................................................................... 23

*In re Banner Health Data Breach Litig.*,
 2020 WL 12574227 (D. Ariz. Apr. 21, 2020) ..................................................................... 23

*In re Brinker Data Incident Litig.*,
 No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................... 12

*In re Countrywide Financial Corp. Client Data Sec. Breach Litig.*,
 2010 WL 3341200 (W.D. Ky. Aug. 23. 2010) ..................................................................... 23

*In re Equifax Inc. Client Data Sec. Breach Litig.*,
 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F.3d 1247 (11th Cir.
 2021) ............................................................................................................................ 23

*In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig*.,
 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................. 19

*In re Heartland Payment Systems, Inc. Client Data Sec. Breach Litig.*,
 851 F.Supp.2d 1040 (S.D. Tex. 2012) ............................................................................... 23

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 13

*In re Nassau Cty Strip Search Cases*,
 461 F.3d 219 (2d Cir. 2006) ...................................................................................... 21, 22

*In re Nissan Radiator/Transmission Cooler Litig.*,
 No. 10-cv-7493-VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................... 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................... 9, 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................................... 13

*In re Platinum & Palladium Commodities Litig.*,
 No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. Jul. 15, 2014)............................................... 9

*In re Premera Blue Cross Client Data Sec. Breach Litig.*,

    2019 WL 3410382 (D. Or. Jul. 29, 2019) ................................................................ 23

*In re Sinus Buster Prods. Consumer Litig.*,

    No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)..................... 16

*In re Sonic Corp. Client Data Sec. Breach Litig.*,

    2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ......................................................... 23

*In re Sony Gaming Networks and Client Data Sec. Breach Litig.*,

    2014 WL 7800046 (S.D. Cal. Jul. 10, 2014) ........................................................... 23

*In re Sony SXRD Rear Projection Television Class Action Litig.*,

    No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................. 13

*In re Target Corp. Client Data Sec. Breach Litig.*,

    2017 WL 2178306 (D. Minn. May 17, 2017) ............................................................ 23

*In re The Home Depot, Inc., Client Data Sec. Breach Litig.*,

    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................................................... 23

*In re Yahoo! Inc. Client Data Sec. Breach Litig.*,

    2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................................................... 22, 23

*Kelen v. World Fin. Network Nat. Bank*,

    295 F.R.D. 87 (S.D.N.Y. 2013) ................................................................................ 18

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,

    No. 15-cv-1113-VAB, 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ..................................... 13

*Manley v. Midan Rest. Inc.*,

    No. 1:14-cv-01693, 2016 WL 1274577 (S.D.N.Y. March 30, 2016) ............................... 11, 12

*Marisol A. by Forbes v. Giuliani*,

    126 F.3d 372 (2d Cir. 1997) .................................................................................... 20

*McReynolds v. Richards-Cantave*,

    588 F.3d 790 (2d Cir. 2009) .................................................................................. 9, 10

*Meredith Corp. v. SESAC, LLC*,

    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................. 11, 12, 22

*Mills v. Capital One, N.A.*,

    No. 14-cv-1937-HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ................................... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

    339 U.S. 306 (1950) .............................................................................................. 24

*Newman v. Stein*,

464 F.2d 689 (2d Cir. 1972) ................................................................................ 16

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,

    237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................... 13

*Roach v. T.L. Cannon Corp.*,

    778 F.3d 401 (2d Cir. 2015) .......................................................................... 21

*Robidoux v. Celani*,

    987 F.2d 931 (2d Cir. 1993) .......................................................................... 19

*Shapiro v. JPMorgan Chase & Co.*,

    No. 11-cv-8331-MHD, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................... 16

*Smith v. Triad of Alabama, LLC*,

    No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ............... 12

*Soberal-Perez v. Heckler*,

    717 F.2d 36 (2d Cir. 1983) ............................................................................ 24

*Sykes v. Mel S. Harris & Assocs. LLC*,

    780 F.3d 70 (2d Cir. 2015) ............................................................................ 18

*Vargas v. Capital One Fin. Advisors*,

    559 Fed.Appx. 22 (2d Cir. 2014) .................................................................... 24

*Viafara v. MCIZ Corp.*,

    No. 12-cv-7452-RLE, 2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014) .................... 15

*WalMart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ..................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

    396 F.3d 96 (2d Cir. 2005) ............................................................... 9, 10, 24, 25

*Weber v. Gov't Emps, Ins. Co.*,

    262 F.R.D. 431 (D.N.J. 2009) ........................................................................ 15

*Willix v. Healthfirst, Inc.*,

    No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......... 14

*Zeltser v. Merrill Lynch & Co.*,

    No. 13-cv-1531-FM, 2014 WL 4816134 (S.D.N.Y. Sep. 23, 2014) ............ 14, 22, 23

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 17, 23

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 18

Fed. R. Civ. P. 23(a)(2)................................................................................................ 18

Fed. R. Civ. P. 23(a)(3)................................................................................................ 19

Fed. R. Civ. P. 23(a)(4)........................................................................................... 19, 21

Fed. R. Civ. P. 23(b)..................................................................................................... 17

Fed. R. Civ. P. 23(b)(1)................................................................................................ 23

Fed. R. Civ. P. 23(b)(2)................................................................................................ 23

Fed. R. Civ. P. 23(b)(3)............................................................................... 17, 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................... 25

Fed. R. Civ. P. 23(c)(3)................................................................................................ 25

Fed. R. Civ. P. 23(e)(1)(B)..................................................................................... 23, 24

Fed. R. Civ. P. 23(e)(2)............................................................................................... 8, 9

Fed. R. Civ. P. 23(g)..................................................................................................... 21

Fed. R. Civ. P. 23(g)(1)(A)........................................................................................... 20

**Other Authorities**

Federal Judicial Center, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE (2010)................................................................. 24

Federal Judicial Center, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3d Ed. 2010) ............................................................................................... 24

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004) ................................... 23

Plaintiffs Peter Kobor and Mary Cogan (collectively, "Plaintiffs" or "Representative Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement[1] and Release (the "Settlement Agreement").

## I.    INTRODUCTION

This litigation arises from a ransomware attack suffered by Skidmore College ("Defendant" or "Skidmore") on or about February 15, 2023, that resulted in the unauthorized access to personally identifiable information ("PII") of Plaintiffs and Class Members, totaling approximately 12,143 impacted persons who are primarily current and former students or current and former employees of Defendant (the "Data Incident" or "Incident"). On or about September 15, 2023, Defendant began notifying the impacted individuals that their PII, including Social Security numbers in combination with names, addresses, dates of birth, health insurance information, and credit/debit card numbers, was compromised. *See* Plaintiffs' Consolidated Class Action Complaint ("Compl."), ¶ 3, ECF No. 24.

Following notification of the Data Incident, Plaintiffs each brought separate suits against Skidmore relating to the Incident. On December 14, 2023, Plaintiffs' suits were consolidated into the present action (the "Litigation") in the Northern District of New York, Case No. 1:23-cv-1392-MAD-DJS. After consolidation, Plaintiffs and Defendant (collectively, the "Parties") exchanged informal discovery and set a mediation with renowned data breach mediator, Rodney A. Max. As

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Citations to the Settlement Agreement will be abbreviated as "S.A., ¶ _____."

4880-5990-9842.2

part of the mediation process, the Parties exchanged settlement demands over the course of several weeks. On the eve of mediation, the Parties were able to reach an agreement in principle and memorialized the terms in the Settlement Agreement attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed concurrently herewith.

Pursuant to the Settlement Agreement, Representative Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Representative Plaintiffs Peter Kobor and Mary Cogan as Class Representatives; (3) appoint John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC, Philip J. Krzeski of Chestnut Cambronne PA, and William B. Federman of Federman & Sherwood as Settlement Class Counsel; (4) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, confirm that it is appropriate notice and that it satisfies due process and Rule 23, and direct notice to the Settlement Class; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation and to object to or exclude themselves from the Settlement.

## II.     CASE SUMMARY

### A.     The Data Breach

On or about February 17, 2023, an unauthorized actor gained access to the Defendant's network and obtained unauthorized access to the Plaintiffs' and Class Members' PII. Approximately 12,143 individuals' PII was affected by the Data Incident, with the PII lost including names, addresses, Social Security numbers, health insurance applications/claims info, and credit/debit card numbers. Defendant began informing those impacted by the Data Incident in

late September 2023. Plaintiffs have alleged they suffered various injuries because of Defendant's inability to safeguard the sensitive protected identifying information entrusted to it and have alleged that the delay in notification was also harmful.

**B.    Procedural Posture**

After Skidmore provided notice of the Incident, two separate class action complaints were filed in the Northern District of New York: *Kobor v. Skidmore College,* No. 1:23-cv-01392-MAD-DJS, and *Cogan v. Skidmore College*, No. 1:23-CV-01409-MAD-DJS. On December 14, 2023, the Court granted Plaintiffs' Motion to Consolidate and found that the *Kobor* and *Cogan* actions shared common issues of law and fact arising out of the same data breach involving Skidmore. *See* ECF No. 17.  Further, the Court also appointed William B. Federman of Federman & Sherwood and Philip J. Krzeski of Chestnut Cambronne PA as Interim Co-Lead Class Counsel, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Liaison Counsel.  *Id.*

On January 29, 2024, the Plaintiffs filed a Consolidated Class Action Complaint against Skidmore. *See* ECF No. 24. Subsequently, on February 1, 2024, Skidmore requested an extension of time to answer the Consolidated Class Action Complaint, and to allow time to explore a possible settlement.  *See* ECF No. 25. On April 3, 2024, counsel for the Defendant filed a letter notifying the Court that the Parties had reached an agreement in principle to settle the class action. *See* ECF No. 27.

**C.    History of Negotiations**

Following productive discussions related to the prospect of reaching a class-wide resolution, the Parties scheduled a mediation for March 15, 2024 with mediator, Rodney A. Max. *See* Declaration of William B. Federman in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl.") ¶ 4.  In anticipation of

mediation, the Parties exchanged informal discovery that enabled each side to evaluate the other's respective position. *Id.* Prior to mediation, the Parties exchanged several written demands, and, through arm's-length negotiations, the Parties reached an agreement in principle in March of 2024. After the settlement was reached, the Parties worked diligently to: (i) finalize the settlement documentation, including the Settlement Agreement and accompanying exhibits, and Plaintiffs' Unopposed Motion for Preliminary Approval with declarations in support; (ii) solicit bids and mutually agree on a Claims Administrator; and (iii) negotiate and exchange confirmatory discovery verifying the remedial security measures Skidmore either has implemented or will implement in the future. *Id.*, ¶ 5.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) Credit Monitoring; (2) Expense reimbursement, including reimbursement for Documented Out-of-Pocket Expenses and Attested Lost Time; and (3) Improvements to Skidmore's data security environment. S.A., ¶¶ 2.1-2.4. The Settlement Class consists of:

> "All persons who were sent written notification by Skidmore that their Private Information was potentially compromised as a result of the Incident discovered by Skidmore in February 2023."

*Id.* ¶1.25. The Class specifically excludes: (i) Skidmore, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge. *Id.*

**B.    The Settlement Benefits**

The Settlement provides for both monetary and equitable relief. Skidmore has agreed to pay the claims of Settlement Class Members arising from the Data Incident with a cap of $3,500 for any individual with documented expenses or attested lost time. *Id.* ¶ 2.2.  In addition, Skidmore has agreed to maintain security-related changes to increase the protection of Settlement Class Members' PII in its custody and control going forward. *Id.* ¶ 2.4.

**1.    Out of Pocket Expenses and Lost Time Reimbursement**

Settlement Class Members seeking reimbursement for out-of-pocket expenses and lost time must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the deadline for the commencement of notice to Settlement Class Members as set forth in ¶ 3.2(d) of the Settlement Agreement (the "Claims Deadline"). *Id.* ¶ 2.2.1.  A notice will be provided to the Settlement Class Members specifying the process and deadlines for obtaining reimbursement. *Id.* Settlement Class Members will be required to document expenses for which reimbursement is sought, and/or attest to lost time incurred for up to four hours of lost time to be reimbursed at a rate of $20 per hour.  *Id.; see also id*. ¶ 2.2.  Any additional lost time claimed will require additional documentation. *Id.* ¶ 2.2.1.

**2.    Credit Monitoring and Identity Protection**

In addition to being able to submit a claim for reimbursement of expenses, Settlement Class Members are eligible to receive two (2) years of one bureau credit monitoring. *Id*. ¶ 2.1.

**3.    Ongoing Data Security Efforts and Enhancements**

In addition to the monetary benefits described above, the Settlement Agreement also acknowledges Skidmore's commitment to maintain certain enhancements and improvements to its security environment. *Id.* ¶ 2.4.    Skidmore has agreed to provide documentation that it has

implemented or will implement various security related measures. *Id.* Costs associated with these information security improvements will be paid by Skidmore separate and apart from other settlement benefits. *Id.* Upon request by Plaintiffs' Counsel, Skidmore agrees to provide confirmatory discovery regarding changes and improvements made to protect Settlement Class Members' PII. *Id.*

**C.     Defendant's Payment of Notice and Administrative Costs**

Skidmore will be responsible for payment of all reasonable costs of notice and administration in addition to the claims of Settlement Class Members. *Id.* ¶ 2.6. Any expenses arising out of claims dispute resolution will also be the responsibility of Skidmore. *Id.*

**1.     Notice Plan**

 Skidmore shall pay all of the costs associated with the Claims Administrator and for providing notice to the Settlement Class in accordance with the Preliminary Approval Order as well as the costs of such notice. S.A., ¶ 3.2. Notice shall be provided to Settlement Class Members pursuant to ¶ 3.2 of the Settlement Agreement.

In addition to direct notice, the Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claims period. S.A., ¶ 3.2(c). The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form, and supporting documentation, electronically. *Id.* Further, a toll-free help line shall be made available to address Settlement Class Members' inquiries. S.A., ¶ 3.2(f). The Claims Administrator also will provide copies of the forms of the Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, to Settlement Class Members upon request. *Id.*

**2.      Claims, Objections, and Requests for Exclusion**

The suggested timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, familiarize themselves with the benefits available through the credit monitoring product, and decide whether they would like to opt-out of or object to the Settlement.

Settlement Class Members will have ninety (90) days from the commencement of the notice mailing to submit their claim form to the Claims Administrator, either by mail or online. S.A., ¶ 2.2.1. The Claims Administrator has sole discretion to determine whether: (i) the claimant is a Settlement Class Members; (ii) the claimant has provided all information needed to complete the Claim Form; and (iii) the information submitted could lead a reasonable person to conclude that it is more likely than not that the claimant suffered claimed losses. *Id*. ¶ 2.5.1. Upon receipt of an incomplete Claim Form or a Claim Form without sufficient documentation, the claimant shall have twenty-one (21) days to cure the claim before the Claims Administrator rejects it. *Id*. ¶ 2.5.2.

Any Settlement Class Member who wishes to opt-out of the Settlement will have until sixty (60) days after the commencement of Notice to provide written notice that they would like to be excluded from the Settlement Class. *Id*. ¶ 4.1. The written notice must clearly manifest a Settlement Class Member's intent to opt-out of the Settlement Class. *Id*.

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement must do so in writing and send their objection to the Claims Administrator sixty (60) days from the date on which the notice program commences. Settlement Agreement ¶ 5.1. Further, to be valid, the written objection must include the information detailed in paragraph 5.1 of the Settlement Agreement.

### D.     Attorneys' Fees, Costs, and Service Awards

Class Counsel, by separate Motion, will apply to the Court for an award of attorneys' fees and expenses to be paid by Defendant. After the substantive terms of the settlement were agreed upon, Skidmore agreed not to oppose Class Counsel's request for an award of $195,000 in attorneys' fees and expenses. *Id*. ¶ 7.2

Further, Skidmore also agreed not to oppose Class Counsel's request for service awards totaling $2,000 for each Class Representative to be paid by Skidmore. S.A., ¶ 7.3. From the Litigation's inception, the Class Representatives have been dedicated and active participants in advancing the case forward by: (i) investigating the matter prior to and after retaining counsel; (ii) participating in the plaintiff vetting process implemented by Class Counsel; (iii) reviewing and approving pleadings; (iv) remaining in close contact with Class Counsel to monitor the progress of the litigation; and (v) reviewing and communicating with Class Counsel regarding the settlement. *Id*.

### IV.     THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Class Counsel worked diligently to reach a fair, reasonable, and adequate class-wide settlement. In negotiating and evaluating the Settlement, Representative Plaintiffs and Class Counsel considered the risks of continued litigation, as well as the inherent risks present in data breach class actions, such as surviving beyond the class certification stage. Class Counsel believe the proposed Settlement provides significant relief to the Settlement Class Members and is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### A.     The Preliminary Approval Legal Standard

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) ("*Payment Card*"). In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014).[2]

The Second Circuit has recognized a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*"); *see also Hadel v. Gaucho LLC*, No. 15-cv-3706-RLE, 2016 WL 1060324, at *1 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and

---

[2] Under the December 1, 2018 amendments to Rule 23(e)(2), in weighing preliminary approval, the Court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats Settlement class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the procedural analysis factors, and examine the conduct of the litigation of the negotiations leading up to the proposed settlement. Paragraphs (C) and (D) constitute the substantive analysis factors, examine "[t]he relief that the settlement is expected to provide to class members." *Payment Card*, 330 F.R.D. at 29. These "factors add to, rather than displace," the factors traditionally considered in the Second Circuit during the preliminary approval process. *Id.*

reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

As demonstrated below, the proposed Settlement warrants preliminary approval because it is procedurally and substantively fair and provides significant monetary and remedial relief.

**B.    The Settlement Is Procedurally Fair**

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability [to effectively represent the Class's interests], and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016). The Settlement was reached at arm's length after the case was consolidated and the Parties exchanged informal discovery. Federman Decl. ¶ 5. After reaching a settlement in principle, the Parties dedicated time to negotiate the terms of the Settlement, including finalizing the Settlement Agreement, exhibits, and notice program, as well as determining and confirming remedial measures to enhance Defendant's data security. *Id*.

The settlement discussions were undertaken by Class Counsel who are well versed in complex litigation and, more specifically, data breach class actions. *Id*. ¶ 11. Class Counsel advocated for the interests of the Class throughout the Settlement's negotiations, utilizing their combined, several decades of experience litigating data breach class actions.  *Id*.

Representative Plaintiffs and Class Counsel thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood of success at trial and upon appeal. Federman Decl., ¶ 8.

**C.    The Settlement is Substantively Fair**

To demonstrate the substantive fairness of a settlement agreement, a party must satisfy the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). *Charron*, 731 F.3d at 247. The *Grinnell* factors have not been displaced by the 2018 amendments to Rule 23(e). *See Payment Card*, 330 F.R.D. at 29. The *Grinnell* factors are used to evaluate settlements at the final approval stage, and guide courts at the preliminary approval stage, at which Representative Plaintiffs have a lower burden. Here, each factor supports preliminary approval.

**1.    The complexity, expense, and likely duration of litigation.**

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). Consumer and data breach class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley v. Midan Rest. Inc.*, No. 1:14-cv-01693, 2016 WL 1274577, at *9 (S.D.N.Y. March 30, 2016) ("Most class actions are inherently complex[.]"). Should the Court decline to approve the proposed Settlement, the continuing litigation would be costly, complex, and time-consuming for all parties. There would undoubtedly be a contested class certification motion and Defendant would likely argue that damages could not be calculated on a class-wide basis. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although Representative Plaintiffs are confident in their ultimate success

in certifying a class, *see In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) (certifying class in a data breach case), *Smith v. Triad of Alabama, LLC*, No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (same), there is a risk as data breach class actions are notoriously risky cases and a positive ruling would most likely be challenged by a decertification motion and/or appeal. The time, expense, and risk associated with these issues militates in favor of settlement.

Representative Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data; whether the steps taken before and after the Data Incident were reasonable; and the reliability of competing damages models, as well as the cost attributable to a data security breach and the time spent rectifying any exposure of personal data. Each step towards trial would be subject to Defendant's vigorous opposition. Even if the case were to proceed to judgment on the merits, any final judgment could well be appealed, which would take significant time and resources.

Moreover, Skidmore would be expected to offer substantial defenses at trial concerning the applicability of various statutory and common law claims, including whether Settlement Class Members were injured and had standing, whether Defendant had a duty to preserve the security of Settlement Class Members' data, and whether any injury suffered by Settlement Class Members would be compensable under Plaintiffs' legal theories. Although Representative Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.* For these reasons, this factor weighs strongly in favor of preliminary approval.

### 2. The reaction of the class to the settlement.

This *Grinnell* factor is premature at the preliminary approval stage. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of these [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). However, each Class Representative approves of this proposed Settlement. Class Counsel will address this factor in the final approval papers.

### 3. The stage of the proceedings and the amount of discovery completed.

The "stage of the proceedings" factor is concerned with "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted). To meet this requirement, "formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (citing *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)). It is appropriate for Representative Plaintiffs to enter into a settlement after "Class Counsel [has] conducted extensive investigation into the facts, circumstances, and legal issues associated with this case[,]" particularly when the case is not one "that [is] likely to turn on facts initially in Defendant's sole possession." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113-VAB, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016).

Here, in addition to conducting extensive legal and factual research into the merits of their claims (and likelihood of protracted litigation), the Representative Plaintiffs, through Class Counsel, have filed a lengthy consolidated complaint; engaged in informal discovery; participated

in settlement negotiations; evaluated settlement offers; and worked diligently on behalf of the Settlement Class. Due to this work, the depth of Representative Plaintiffs' and Class Counsel's knowledge of the strengths and potential weaknesses of their claims are more than adequate to support the Settlement.

4.    <strong>The risks of establishing liability and damages.</strong>

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00-cv-9806-SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531-FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sep. 23, 2014). In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F.Supp.3d 290, 303 (E.D.N.Y 2015).

Representative Plaintiffs recognize that, as with any litigation, uncertainties exist. Skidmore continues to deny Representative Plaintiffs' allegations, and should this matter proceed, Representative Plaintiffs expect it will vigorously defend itself on the merits, at each stage of litigation and likely on appeal.

Most fundamentally, while Representative Plaintiffs believe that Skidmore had a duty to protect the security of Representative Plaintiffs' PII and breached that duty by failing to implement reasonable security measures, a jury might not agree. In addition, Representative Plaintiffs anticipate a zealous "battle of the experts" with respect to Skidmore's claims regarding the accessibility of the data Representative Plaintiffs allege was compromised in the Data Incident and

regarding the calculations of damages. For these reasons, although Representative Plaintiffs are confident in the merits of their case, the risks inherent to establishing liability and damages strongly support preliminary approval.

### 5.    The risk of maintaining class action status through trial.

The Litigation settled before a ruling on class certification, and the certification requested herein is for settlement purposes only. While Representative Plaintiffs believe that the Court would certify a litigation class, Skidmore would zealously oppose the motion. Representative Plaintiffs must meet the requirements, including proffering a suitable mechanism for calculating class-wide damages. While Representative Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this proposed Settlement eliminates the otherwise unavoidable risk that they could not do so. Furthermore, even if the Court were to certify a litigation class, the certification can be reviewed and modified at any time. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor weighs in favor of preliminary approval. *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14-cv-1937-HBP, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015).

### 6.    The ability of Defendant to withstand greater judgment.

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps, Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Further, "Courts

have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted). Here, although Skidmore is likely able to withstand a greater judgment, the financial obligations the proposed Settlement imposes on it are nonetheless substantial. This factor weighs in favor of preliminary approval.

       **7.**       **The range of reasonableness of the Settlement considering the best possible recovery and attendant risks of litigation.**

The range-of-reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of recovery at trial. This factor "recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "the settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331-MHD, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)). Indeed, as recognized by the Second Circuit, because of the riskiness of litigation, "there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The remediation measures already undertaken by Defendant will help prevent further harm. *See* S.A., ¶ 2.4. Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to the economic damages incurred. Thus, collectively and independently, the *Grinnell* factors confirm that the Settlement is fair, adequate, and reasonable and provides an excellent result for the Settlement Class.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of Rule 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (i) the class is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law or fact common to the class (commonality); (iii) the claims and defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (iv) the representative parties will fairly and adequately protect the interests of the class (adequate representation). Fed. R. Civ. P. 23(a). The Settlement Class meets each prerequisite of Rule 23(a).

#### 1.    Numerosity

- 17 -

Under Rule 23(a)(1), Representative Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "a proposed class of more than forty members presumptively satisfies the numerosity requirement . . . ." *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (collecting cases). Here, the Settlement Class is estimated to be approximately 12,143 individuals.

## 2.     Commonality

Under Rule 23(a)(2), Representative Plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed Settlement class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citations omitted). Representative Plaintiffs need only show that their injuries stemmed from Defendant's "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).

Here, common questions include, but are not limited to, whether Skidmore had a duty to protect Settlement Class Members' data and whether it breached that duty. Resolution of this common question would require evaluation of the question's merits under a single objective standard; *i.e.*, "whether [Defendant] had a legal duty to adequately protect Settlement Class Members' personal information; . . . whether [Defendant] breached that legal duty; and . . . whether Plaintiffs and members of the class suffered injury as a result of [Defendant]'s failure to act." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., 2019 WL 3183651, at *3 (D. Md. July 15, 2019) (approving settlement in data breach case). Thus, commonality is satisfied.

### 3.    Typicality

Under Rule 23(a)(3), Representative Plaintiffs must show that the proposed class representatives' claims "are typical of the [class's] claims." Fed. R. Civ. P. 23(a)(3). Representative Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493-VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding.").

Here, typicality is met because the same allegedly unlawful conduct by Skidmore was directed at, or affected, Representative Plaintiffs and the members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37. Each Plaintiff, like each Settlement Class Member, received a notice from Skidmore regarding the Data Incident. Their claims are no different than claims of current or former students, or current or former employees of Skidmore, and as such are typical of the class. *See In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (finding typicality in data breach claim as to the settlement class "[b]ecause this claim revolves around [Defendant]'s conduct, as opposed to the characteristics of a particular class member's claim").

### 4.    Adequacy of representation

Under Rule 23(a)(4), Representative Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative Plaintiffs must demonstrate that: (1) the class representatives do not have

conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). To satisfy the first requirement, Representative Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class's representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Representative Plaintiffs possess the same interests as the proposed Settlement Class Members because Representative Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly inadequate security measures and the same Data Incident.

With respect to the second requirement, in appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel possess a long and proven track record of the successful prosecution of class actions, including data breach cases, and numerous appointments as class counsel. *See* Federman Decl., ¶ 11. Class Counsel have worked cooperatively and efficiently and have devoted substantial time and resources to this case. This work has included (1) investigating the Data Breach; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing Settlement Class Members about their experiences; (4) preparing and filing a consolidated complaint; (5) drafting and exchanging informal discovery requests with Defendant; and (6) negotiating the proposed settlement and preparing the settlement documentation. *Id*. ¶ 12. Because Class Counsel have demonstrated their commitment to litigating these claims, the Court should appoint them to serve as Settlement Class Counsel.

Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Class Counsel, are satisfied.

### D.     The Requirements of Rule 23(b)(3) Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Representative Plaintiffs seek certification under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.     Common legal and factual questions predominate in this action.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted). Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Amchem Prods., 521 U.S.* at 620. As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart*, 2015 WL 5945846, at *4 (citation omitted). Courts have found similar

settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted).

Here, for settlement purposes, central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Skidmore had a duty to the Class to prevent exposure of their PII and whether it took reasonable actions to prevent the Data Incident. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

### 2.    A class action is the superior means to adjudicate Plaintiffs' claims.

Rule 23(b)(3) also requires Representative Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3 (citation omitted). As a result of the uncertainty of the cost to each class member of the potential exposure of their data, the expense

and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation and recovery economically viable. *See, e.g.*, *Tart*, 2015 WL 5945846, at \*5. "Employing the class device here will not only achieve economies of scale for Class Members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 WL 4816134, at \*3 (citations omitted). For all of the foregoing reasons, a class action is superior to individual suits. [3]

The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Court should preliminarily certify the Settlement Class.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement

---

[3] Granting preliminary approval of this Settlement and Settlement Class is consistent with rulings in other data breach security cases from districts across the United States. *See, e.g.*, *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re The Home Depot, Inc., Client Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *In re Target Corp. Client Data Sec. Breach Litig.*, 2017 WL 2178306 (D. Minn. May 17, 2017); *Cotter v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021); *In re Equifax Inc. Client Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F.3d 1247, 1281-82 (11th Cir. 2021); *In re Banner Health Data Breach Litig.*, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020); *In re Premera Blue Cross Client Data Sec. Breach Litig.*, 2019 WL 3410382 (D. Or. Jul. 29, 2019); *In re Countrywide Financial Corp. Client Data Sec. Breach Litig.*, 2010 WL 3341200 (W.D. Ky. Aug. 23. 2010); *In re Heartland Payment Systems, Inc. Client Data Sec. Breach Litig.*, 851 F.Supp.2d 1040 (S.D. Tex. 2012); *In re Sonic Corp. Client Data Sec. Breach Litig.*, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019); *In re Sony Gaming Networks and Client Data Sec. Breach Litig.*, 2014 WL 7800046 (S.D. Cal. Jul. 10, 2014).

notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983). The Court has broad power over approving procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness imposed under the due process clauses in the U.S. Constitution. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members."). Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 Fed.Appx. 22, at *26 (2d Cir. 2014) (summary order).

Here, the proposed notice program, outlined in the Settlement Agreement and related forms of notice, meet the requirements of due process and Rule 23(e)(1)(B). Notice shall be disseminated via First Class U.S. mail, postage prepaid, or electronic mail, to all Settlement Class Members. S.A., ¶ 3.

These proposed methods for providing notice are reasonable, given that they identify the Settlement Class Members with precision and Skidmore has contact information for the vast majority, if not all, of the Settlement Class Members. The Supreme Court has consistently found that direct notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950). This notice will reach far beyond the minimum number of Settlement Class Members who must be reached in settlements. *See* Federal Judicial Center, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE (2010) at 3 ("It is reasonable to reach between 70-95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%"); Federal Judicial Center, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3d Ed. 2010) at 27

(explaining the "reach" of a proposed class action notice plan is normally within a range of 70-95%).

Substantively, Rule 23(c)(2)(B) requires, and the notices of Settlement provide, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who timely requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114. As described in the Settlement Agreement, the proposed notice plan complies with Rule 23(e)'s requirements.

Moreover, the Court should approve the Claims Administrator to implement the notice plan and administer the benefits of the Settlement and the claims of Settlement Class Members. After due consideration, the Parties have selected Simpluris to serve as the notice and Claims Administrator. Simpluris is an extremely well-regarded notice and claims administrator and has extensive experience in cases of the type here.

## VII.    CONCLUSION

For the foregoing reasons, Representative Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the Preliminary Approval Order.

Dated: August 28, 2024

Respectfully submitted,

*/s/ John J. Nelson*
John Nelson (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
jnelson@milberg.com

*Interim Liaison Counsel*

Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
pkrzeski@chestnutcambronne.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
-and-
212 W. Spring Valley Road
Richardson, TX  75081
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Interim Co-Lead Class Counsel*

Randi Kassan
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (212) 594-5300
rkassan@milberg.com

*Attorneys for Plaintiff and Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 28, 2024, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

/s/ John J. Nelson
John Nelson (admitted *pro hac vice*)