**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER KOBOR, individually and on behalf of all others similarly situated, | Case No. 1:23-CV-01392-MAD-DJS |
| Plaintiff, | **DECLARATION OF WILLIAM B. FEDERMAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| v. | |
| SKIDMORE COLLEGE, | |
| Defendant. | |
| | Case No. 1:23-CV-01409-MAD-DJS |
| MARY COGAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | |
| SKIDMORE COLLEGE, | |
| Defendant. | |

I, **William B. Federman**, declare under penalty of perjury as follows:

1.      I am an attorney duly admitted to the bars of the states of Texas, Oklahoma, and New York.  I am a founder and managing member of the law firm Federman & Sherwood and am Co-Lead Class Counsel for Plaintiffs and the Settlement Class ("Class Counsel") in the above referenced action (the "Action"). I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law in Support, filed contemporaneously herewith.

2.      Plaintiffs Peter Kobor and Mary Cogan ("Plaintiffs"), on behalf of themselves and on behalf of all other members of the putative class, and Defendant Skidmore University

("Defendant" or "Skidmore") (collectively, the "Parties") have reached an agreement to settle this Action pursuant to the terms of the Settlement Agreement, attached hereto as **Exhibit 1**.[1]

3.      Beginning in November of 2023, multiple lawsuits were filed against Defendant in response to an unauthorized compromise of Plaintiffs' and Class Members' PII. On January 29, 2024, Plaintiffs filed their Consolidated Class Action Complaint against Defendant, alleging Defendant failed to adequately protect Plaintiffs' and the Class's PII from unauthorized access. *See* Plaintiffs' Consolidated Class Action Complaint, ECF No. 24. Subsequently, Defendant requested an extension of time to answer the Consolidated Class Action Complaint and to allow time to explore a possible settlement.

4.      After productive discussions related to the prospect of reaching a class-wide resolution, the Parties scheduled a mediation for March 15, 2024 with mediator, Rodney A. Max. Before the scheduled mediation, the Parties exchanged informal discovery that enabled each side to evaluate the strengths of the other's respective position. In addition, the Parties exchanged multiple written settlement demands. In March of 2024, the Parties reached an agreement in principle after weeks of arm's-length negotiations.

5.      The proposed Settlement was agreed to following extensive arm's-length negotiations, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. After the settlement was reached, the Parties worked diligently to: (i) finalize the settlement documentation, including the Settlement Agreement and accompanying exhibits, and Plaintiffs' Unopposed Motion for Preliminary Approval with declarations in support;

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

(ii) solicit bids and mutually agree on a Claims Administrator; and (iii) negotiate and exchange confirmatory discovery verifying the remedial security measures Skidmore either has implemented or will implement in the future. The terms of the Settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties.

6.      The Settlement negotiated on behalf of the Settlement Class provides significant benefits to the Settlement Class Members. The Settlement provides for three separate forms of relief: (1) Credit Monitoring; (2) Expense reimbursement, including reimbursement for Documented Out-of-Pocket Expenses and Attested Lost Time; and (3) Improvements to Skidmore's data security environment. Skidmore has agreed to pay the claims of Settlement Class Members arising from the Data Incident with a cap of $3,500 to any individual with documented expenses or attested lost time. Settlement Class Members will be required to document expenses for which reimbursement is sought, and/or attest to lost time incurred for up to four hours of lost time to be reimbursed at a rate of $20 per hour.

7.      Before settlement negotiations, and as alluded to above, Class Counsel adequately represented the Class by fully investigating the facts and legal claims; preparing the Complaints; exchanging informal discovery requests with Skidmore; and negotiating and reaching a Settlement at arm's length, in good faith, and without collusion.

8.      By the time the Settlement in principle was reached, Plaintiffs and Class Counsel fully understood the claims, defenses, and were well informed of the strengths and weaknesses of the case to competently assess the risks of continued litigation. Plaintiffs and Class Counsel

3

thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood of success at trial and upon appeal.

9.      Plaintiffs and Class Counsel did not discuss the award of Attorneys' Fees and Expenses with Defendant until after the substantive terms of the Settlement had been agreed upon.

10.     After the Settlement was reached, the Parties undertook a competitive bidding process to achieve an excellent Claims Administrator for the Class—Simpluris. This included soliciting cost proposals from different claims administrators. Simpluris is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. The Parties selected Simpluris after considering bids from multiple administration firms and believe that Simpluris will be able to meet the obligations imposed on the Claims Administrator under the settlement for a reasonable cost.

11.     It is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant to further protracted litigation.   This view is informed by Class Counsel's decades of work litigating complex actions, including data breach class actions. Federman & Sherwood, Chestnut Cambronne PA, and Milberg Coleman Bryson Phillips Grossman, PLLC all have extensive experience in successfully litigating data breach class actions. *See* **Exhibit 2, Exhibit 3, and Exhibit 4** (resumes of Federman & Sherwood, Chestnut Cambronne PA, and Milberg Coleman Bryson Phillips Grossman, PLLC).

12.     Class Counsel have worked cooperatively and efficiently and have devoted substantial time and resources to this case. This work has included (1) investigating the Data Breach; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing Settlement Class Members about their experiences; (4) preparing and filing a consolidated

complaint; (5) drafting and exchanging informal discovery requests with Defendant; and (6) negotiating the proposed settlement and preparing the settlement documentation.

13.     Class Counsel represent that there are no agreements related to the Settlement other than those reflected in the Settlement Agreement itself and an agreement with Simpluris to perform notice and settlement administration services if this Motion is granted by the Court.

14.     The Settlement Class Representatives have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the litigation.

15.     It is my opinion that the proposed class action settlement is fair, reasonable, and adequate and is an outstanding result for the Settlement Class Members.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2024                    Respectfully submitted,

                                          */s/: William B. Federman*
                                          William B. Federman (admitted *pro hac vice*)
                                          **FEDERMAN & SHERWOOD**
                                          10205 N. Pennsylvania Avenue
                                          Oklahoma City, OK 73120
                                          T: (405) 235-1560
                                          wbf@federmanlaw.com

                                          ***Co-Lead Counsel for Plaintiffs and the Proposed Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 28, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>*/s/: William B. Federman*</u>
William B. Federman

# <u>EXHIBIT 1</u>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PETER KOBOR, individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

SKIDMORE COLLEGE,

       Defendant.

Case No. 1:23-CV-01392-MAD-DJS

---

MARY COGAN, individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

SKIDMORE COLLEGE,

       Defendant.

Case No. 1:23-CV-01409-MAD-DJS

---

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of this ____ day of August, 2024, is made and entered into by and among the following Settling Parties (as defined below): (i) Peter Kobor ("Plaintiff Kobor" or "Kobor"), individually and on behalf of the Settlement Class (as defined below), by and through his counsel of record MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC ("Kobor's Counsel"); (ii) Mary Cogan ("Plaintiff Cogan" or "Cogan," and together with Kobor, "Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through her counsel of record FEDERMAN & SHERWOOD ("Cogan's Counsel," and together with Kobor's Counsel, "Plaintiffs' Counsel"); and (iii) Skidmore College ("Defendant" or "Skidmore," and together with Plaintiffs, the "Settling Parties"), by and through its counsel of record, BAKER & HOSTETLER LLP.  The Settlement Agreement is subject to Court approval and is intended by

1

the Settling Parties to fully, finally, and forever resolve, discharge, release, and settle the Released

Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

Plaintiffs, on behalf of themselves and others similarly situated, allege that on February 15,

2023, an unauthorized actor intentionally targeted and gained access to Skidmore's network,

deployed ransomware, and obtained unauthorized access to Skidmore's files (the "Incident").

[Compl., ¶ 2].    Plaintiffs further allege that the personally identifiable information of

approximately 12,143 individuals was compromised in the Incident, including Social Security

numbers in combination with names, addresses, dates of birth, health insurance information, and

credit/debit card numbers.  [*Id.* at ¶ 3].  Plaintiffs allege that Skidmore did not begin notifying

impacted individuals until September 15, 2023.  [*Id.* at ¶ 6].  Plaintiff Kobor alleges that, following

the Incident, he experienced direct instance of attempted fraud on his account including falsified

credit card applications and attempts to reset his personal email password without authorization.

[*Id.* at ¶¶ 107–109].  Both Plaintiffs allege lost time and opportunity costs, annoyance, interference,

and inconvenience as a result of the Incident.  [*Id.* at ¶¶ 106, 125].  Following notification of the

Incident, Plaintiffs each brought separate suits against Skidmore relating to the Incident.  On

December 14, 2023, Plaintiffs' suits were consolidated into the present action (the "Litigation") in

the Northern District of New York, Case No. 1:23-cv-1392-MAD-DJS.

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution

of all claims and causes of action asserted, or that could have been asserted, against Skidmore and

the Released Persons (as defined below) relating to the Incident, by and on behalf of Plaintiffs and

Settlement Class Members (as defined below), and any other such actions by and on behalf of any

other individuals originating, or that may originate, in jurisdictions in the United States of America

("United States," as defined below) against Skidmore and the Released Persons relating to the Incident.

## II.    CLAIMS OF PLAINTIFFS AND BENEFITS OF SETTLING

Plaintiffs believe that the claims asserted in the Litigation, as set forth in the Complaint, have merit.  Plaintiffs and Class Counsel (as defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Skidmore through further discovery, motion practice, trial, and potential appeals.  They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.  Class Counsel are highly experienced in class-action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue in data-breach litigation in general and in this Litigation in particular.  They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Skidmore denies each and all of the claims and contentions alleged against it in the Litigation.  Skidmore denies all allegations of wrongdoing or liability that are alleged, or which could be alleged, in the Litigation.  Nonetheless, Skidmore has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Skidmore has considered the uncertainty and risks inherent in any litigation.  Skidmore has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Class Counsel, and Skidmore that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except as to those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.     Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1     "Agreement" or "Settlement Agreement" means this Agreement.

1.2     "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator (as defined below).

1.3     "Claims Administrator" means Simpluris, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data-breach litigation.

1.4     "Claims Deadline" means the postmark and/or online submission deadline for Valid Claims (as defined below) pursuant to ¶ 2.2.3.

1.5     "Claim Form" means the form that the Settlement Class Members must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein.  The Claim Form shall require a sworn signature or electronic verification under penalty of perjury, but shall not require notarization.  The Claim Form will be substantially in a form as shown in the

4

template attached hereto as **Exhibit C** and will be available on both the Settlement Website (as defined below) and in paper format if specifically requested by a Settlement Class Member.

1.6     "Costs of Claims Administration" mean all actual costs associated with or arising from Claims Administration.

1.7     "Court" means the United States District Court for the Northern District of New York.

1.8     "Incident" means the "Data Breach" alleged in the Complaint, whereby unauthorized user(s) gained access to Skidmore's network, deployed ransomware, and obtained unauthorized access to Defendant's files, including the Private Information of approximately 12,143 individuals, on February 15, 2023.  Skidmore provided notification of the Incident to all potentially impacted individuals beginning on September 15, 2023.

1.9     "Defendant" means Skidmore College, also referred to as "Defendant" or "Skidmore" throughout.

1.10     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.11 herein have occurred and been met.

1.11     "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court; (ii) the Court has entered a Judgment (as defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service

award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.12    "Judgment" means a judgment rendered by the Court, substantially in the form as shown in **Exhibit E**.

1.13    "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in the template attached as **Exhibit B** hereto.

1.14    "Objection Date" means the date by which Settlement Class Members' objection must be filed with the Clerk of the Court for that objection to be timely and effective.

1.15    "Opt-Out Date" means the date by which requests for exclusion from settlement must be postmarked in order to be effective and timely.

1.16    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.17    "Private Information" means, but is not limited to, individual names, Social Security numbers, financial account numbers, health care information, and any other types of personally identifiable information collected or maintained by Skidmore leading to notification regarding the Incident.

1.18    "Plaintiffs" or "Class Representatives" mean Peter Kobor and Mary Cogan.

1.19    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, substantially

6

in the form as shown in **Exhibit D** hereto. The Settling Parties will prepare a mutually agreeable Preliminary Approval Order.

1.20 "Settlement Class Counsel" and/or "Class Counsel" means John J. Nelson of the law firm MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Philip J. Krzeski of the law firm CHESTNUT CAMBRONNE PA, and William B. Federman of the law firm FEDERMAN & SHERWOOD.

1.21 "Related Parties" means Defendant Skidmore College's respective past or present subsidiaries, divisions, and related or affiliated entities, and each of Defendant's and their respective predecessors, successors, trustees, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in this Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge.

1.22 "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect; violations of any New York and similar state consumer protection statutes, including, but not limited to, the New York General Business Law; California Consumer Privacy Act and California Unfair Competition Law; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment;

wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Incident. Released Claims shall not include the right of any Settlement Class Member, Class Counsel, or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.23    "Released Persons" means Defendant and the Related Parties.

1.24    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.25    "Settlement Class" means "All persons who were sent written notification by Skidmore that their Private Information was potentially compromised as a result of the Incident discovered by Skidmore in February 2023." The Settlement Class specifically excludes: (i) Skidmore, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent

8

jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge.

1.26    "Settlement Class Member(s)" or "Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.27    "Settlement Website" means the website described in ¶ 3.2(c).

1.28    "Settling Parties" means, collectively, Skidmore and Plaintiffs, individually and on behalf of the Settlement Class.

1.29    "Short Notice" means the content of the mailed notice to the proposed Settlement Class Members, substantially in the form as shown in the template attached as **Exhibit A** hereto. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members, among other things, of the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing (as defined below).

1.30    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq*., Montana Code § 28-1-

1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.31    "United States" as used in this Settlement Agreement includes all 50 states, the District of Columbia and all territories.

1.32    "Valid Claims" means settlement claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or dispute resolution process described in ¶ 2.5.

## 2.    Settlement Benefits

2.1    Credit Monitoring.  All Settlement Class Members who submit a Valid Claim using the Claim Form, including necessary supporting documentation, are eligible for two years of one bureau credit monitoring.

2.2    Expense Reimbursement.

a) _Documented Out-Of-Pocket Expenses._ All Settlement Class Members who submit a Valid Claim using the Claim Form, including necessary supporting documentation, are eligible for reimbursement of the following documented out-of-pocket expenses, not to exceed $3,500 per Settlement Class Member, that were incurred as a result of the Incident: (i) unreimbursed bank or credit card fees; (ii) long distance phone charges (only if charged by the minute); (iii) long distance or cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; and/or (vi) gasoline for local travel; and/or (vii) credit monitoring or other identity theft monitoring purchased by Settlement Class Members between February 15, 2023 and the Notice Date. Claims for documented out-of-pocket expenses and reimbursement of lost time and are subject to the same $3,500 cap. Settlement Class Members must also have made reasonable efforts to avoid, or seek reimbursement for, such Losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Settlement Class Members with Losses must submit substantial and plausible documentation supporting their claims. This can include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement for Losses, but can be considered to add clarity or support other submitted documentation and a description of how the time was spent. The total of all amounts recovered under this paragraph shall not exceed $3,500 per Settlement Class Member.

b) _Reimbursement for Attested Lost Time._ Settlement Class Members are also eligible to receive reimbursement for up to four (4) hours of lost time spent dealing with the

Incident, but only if at least one (1) full hour was spent dealing with the Incident (calculated at the rate of $20 per hour). Settlement Class Members may also seek reimbursement for up to four (4) additional hours if sufficiently documented (calculated at the rate of $20 per hour). Settlement Class Members may receive up to four (4) hours of additional lost time if the Settlement Class Member: (i) attests that any claimed lost time was spent responding to issues raised by the Incident; and (ii) provides documentation supporting how the claimed lost time was spent and how it was related to the Incident. Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses and are subject to the same $3,500 cap.

2.2.1 Settlement Class Members seeking reimbursement under ¶ 2.2 must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the deadline for the commencement of notice to Settlement Class Members as set forth in ¶ 3.2(d) (the "Claims Deadline"). The notice to the Settlement Class will specify this deadline and other relevant dates described herein. Failure to provide supporting documentation for Documented Out-Of-Pocket Losses, referenced above, as requested on the Claim Form, shall result in denial of a claim. For the reimbursement of up to four (4) hours of attested lost time claimed by Settlement Class Members, the Settlement Class Member must provide an attestation that the time claimed was spent responding to issues raised by the Incident and a written description of how the time was spent. However, for the additional documented lost time claimed by Settlement Class Members, the Settlement Class Member must provide documentation that supports how they spent the time and how the time was related to the Incident.

2.3    <u>Limitation on Reimbursable Expenses</u>. Nothing in this Settlement Agreement shall be construed as requiring Skidmore to provide, and Skidmore shall not be required to provide, for

a double payment for the same loss or injury that was reimbursed or compensated by any other source.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.4    <u>Information Security Improvements</u>.  Upon request, Skidmore has agreed to provide sufficient documentation to demonstrate that it either has implemented or will implement various security related measures.  Costs associated with these information security improvements will be paid by Skidmore separate and apart from other settlement benefits.  Upon request by Plaintiffs' Counsel, Skidmore agrees to provide confirmatory discovery regarding changes and improvements made to protect Settlement Class Members' Private Information.

2.5    <u>Dispute Resolution for Claims</u>.

2.5.1    The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Settlement Class Member; (ii) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.2; and (iii) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Incident.  The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, and required documentation regarding the claimed losses.  The Claims Administrator's initial review will be limited to a determination of whether the claim is complete and plausible.  For any claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those claims to the Settling Parties (one lawyer shall be designated to fill this role for Class

Counsel).  If the Settling Parties do not agree with the claimant's claim, after meeting and conferring, then the claim shall be referred to a claims referee for resolution.  The Settling Parties will mutually agree on the claims referee should one be required.

2.5.2    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant twenty-one (21) days to cure the defect before rejecting the claim.  Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later.  In the event of unusual circumstances interfering with compliance during the twenty-one (21) day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the twenty-one (21) day deadline in which to comply; however, in no event shall the deadline be extended to later than six (6) months from the Effective Date.  If the defect is not timely cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.5.3    Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have ten (10) days to accept, in whole or lesser amount, or reject each claim.  If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid. If the Claims Administrator determines that such a claim is not facially valid because the claimant has not provided all information needed to complete the Claim Form and enable the Claims Administrator to evaluate the claim, then the Claims Administrator may reject the claim without

14

any further action.  If the claim is rejected in whole or in part, for other reasons, then the claim shall be referred to the claims referee.

      2.5.4    If any dispute is submitted to the claims referee, the claims referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days of the claims referee's receipt of the submitted dispute.  The claims referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) days of the claims referee's receipt of the submitted dispute.  The claims referee's determination shall be based on whether the claims referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Incident.  The claims referee shall have the power to approve a claim in full or in part.  The claims referee's decision will be final and non-appealable.  Any claimant referred to the claims referee shall reasonably cooperate with the claims referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the claims referee to verify the claim through third-party sources, and failure to cooperate shall be grounds for denial of the claim in full.  The claims referee shall make a final decision within thirty (30) days of the latter of the following events: its receipt of the submitted dispute and receipt of all supplemental information requested.

      2.6    Settlement Expenses.  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of dispute resolution described in ¶ 2.5, shall be paid by Skidmore.

      2.7    Settlement Class Certification.  The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and

the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

3.      **Order of Preliminary Approval and Publishing of Notice of Final Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Plaintiffs' Counsel shall submit this Settlement Agreement to the Court as part of a motion for preliminary approval of the Settlement Agreement requesting entry of a mutually agreeable Preliminary Approval Order requesting, *inter alia:*

a)      certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.7;

b)      preliminary approval of the Settlement Agreement as set forth herein;

c)      appointment of John J. Nelson of the law firm MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Philip J. Krzeski of the law firm CHESTNUT CAMBRONNE PA, and William B. Federman of the law firm FEDERMAN & SHERWOOD as Class Counsel;

d)      appointment of Plaintiffs as Class Representatives;

e)      approval of a customary form of Short Notice to be e-mailed or mailed by first-class United States Postal Service ("USPS") mail to Settlement Class Members in a form substantially similar to the template attached as **Exhibit A** hereto;

f)      approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the template attached as **Exhibit B** hereto, which, together

16

with the Short Notice, shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, the requested attorneys' fees, and the date, time and place of the Final Fairness Hearing;

g)    approval of the Claim Form to be available on the Settlement Website for submitting claims and available in .pdf format on the Settlement Website for or if specifically requested by the Settlement Class Member, in a form substantially similar to the template attached as **Exhibit C** hereto; and

h)    appointment of Simpluris as the Claims Administrator.

3.2    Skidmore shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Any attorneys' fees, costs, and expenses of Plaintiffs' Counsel, and any service award to the Class Representatives, as approved by the Court, shall be paid by Skidmore as set forth in ¶ 7 below.   Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a)    *Class Member Information*: Within fourteen (14) days of entry of the Preliminary Approval Order, Skidmore shall provide the Claims Administrator with the name, physical address, or e-mail, if available, of each Settlement Class Member (collectively, "Class Member Information") that Skidmore and/or the Related Parties possess.

b)    The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time.  Except to administer the settlement as provided in this Agreement, or to provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c)    _Settlement Website_: Prior to the dissemination of the Short Notice, the Claims Administrator shall establish the Settlement Website, that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Agreement; (v) the Complaint; (vi) Class Counsel's application for attorneys' fees and expenses and the service awards for Class Representatives; and (vii) any other materials agreed upon by the Settling Parties and/or required by the Court.  The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form, and supporting documentation, electronically.

d)    _Short Notice_: Within forty-five (45) days of entry of the Preliminary Approval Order and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class members as follows:

18

- Via postcard to the email address or postal address provided to Skidmore and/or the Related Parties by the Settlement Class Members. Before any physical mailing under this paragraph occurs, the Claims Administrator shall run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS within thirty (30) days of entry of the Preliminary Approval Order.

- In the event that a Short Notice is returned to the Claims Administrator by USPS because the postal address of the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice.

- In the event that a Short Notice is returned to the Claims Administrator by email because the email address of the recipient is not valid, the Claims Administrator shall re-send the Short Notice to the postal address on file within seven (7) days of receiving the returned Short Notice.

- In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out Date and the Objection Date, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is

19

Docusign Envelope ID: A5D0B0D2-FF4A-4289-AB5D-511A786BE50F

no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

- The date of the first-mailing of the Short Notice shall be deemed the "notice commencement date" for purposes of calculating the opt-out and objection deadlines, and all other deadlines that flow from the notice commencement date.

e) Publishing, on or before the date of mailing the Short Notice, the Claim Form and the Long Notice on the Settlement Website as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

f) A toll-free help line shall be made available to provide Settlement Class Members with additional information about the settlement and to respond to Settlement Class Members' questions. The Claims Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request to Settlement Class Members; and

4887-3214-6653.1

g)      Contemporaneously with seeking Final approval of the settlement, Class Counsel and Skidmore shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3      The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The notice program shall commence within forty-five (45) days after entry of the Preliminary Approval Order and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.4      Class Counsel and Skidmore's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant Final approval of the settlement set forth herein.

3.5      Skidmore will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after this Settlement Agreement is filed with the Court.

**4.      Opt-Out Procedures**

4.1      Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated email address or Post Office box established by the Claims Administrator.  Persons wishing to opt-out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked (or dated for emails) no later than sixty (60) days after the date on which the notice program commences pursuant to ¶ 3.2(d).

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any cash benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than twenty (20) timely and valid Opt-Outs (exclusions) submitted, Skidmore may, by notifying Class Counsel and the Court in writing, void this Settlement Agreement.  If Skidmore voids the Settlement Agreement pursuant to this paragraph, Skidmore shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and any service award and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 5.     Objection Procedures

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection to the Court by the Objection Date.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the

Docusign Envelope ID: A5D0B0D2-FF4A-4289-AB5D-511A786BE50F

objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court and contain the case name and docket number *Kobor et al. v. Skidmore College,* Case No. 1:23-CV-01392-MAD-DJS (the "*Kobor* Action"), no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d), and served concurrently therewith upon Class Counsel, John J. Nelson of the law firm MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, 402 W. Broadway, Suite 1760, San Diego, CA 92101; Philip J. Krzeski of the law firm CHESTNUT CAMBRONNE PA, 100 Washington Avenue South, Suite 1700, Minneapolis, MN 55401; William B. Federman of the law firm FEDERMAN & SHERWOOD, 10205 North Pennsylvania Avenue, Oklahoma City, OK 73120; and counsel for Skidmore, Casie D. Collignon of the law firm BAKER & HOSTETLER LLP, 1801 California Street, Suite 4400, Denver, CO 80202.  Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the Final order approving this Settlement Agreement, or the Judgment to be entered upon Final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## 6.    Releases

6.1    Upon the Effective Date, each Settlement Class Member (who has not timely and validly excluded himself or herself from the settlement), including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member (who has not timely and validly excluded himself or herself from the settlement), including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims are asserted.

6.2    Upon the Effective Date, Skidmore shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiffs, each and all of the Settlement Class Members, Class Counsel and Plaintiffs' Counsel, of all claims, including, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims.  Any other claims or defenses Skidmore may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3    Notwithstanding any term herein, neither Skidmore nor its Related Parties, shall have or shall be deemed to have released, relinquished, or discharged any claim or defense against

any Person other than Plaintiffs, each and all of the Settlement Class Members, Class Counsel and Plaintiffs' Counsel.

6.4    Nothing in this ¶ 6 shall preclude any action to enforce the terms of this Settlement Agreement by Plaintiffs, Settlement Class Members, Class Counsel, and/or Skidmore.

**7.    Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Awards to Plaintiffs**

7.1    The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or any service award to Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Skidmore would not object to a request for reasonable attorneys' fees, costs, expenses, and a service award to Plaintiffs as may be ordered by the Court.  Skidmore and Class Counsel then negotiated and agreed to the provisions described in ¶¶ 7.2 and 7.3.  Skidmore shall pay any attorneys' fees, costs, expenses and/or any service award to Plaintiffs, as provided for in ¶¶ 7.2 and 7.3 and as ordered by the Court, separate and apart from any benefits provided to Settlement Class Members and the costs of notice and Claims Administration.

7.2    Subject to Court approval, Class Counsel will file a motion for attorneys' fees, inclusive of any costs and expenses of the Litigation in an amount not to exceed $195,000, to Plaintiffs' Counsel for reimbursement of costs incurred.  Class Counsel, in their sole discretion, shall allocate and distribute any amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3    Subject to Court approval, Class Counsel will file a motion for approval of a service award in the amount of $2,000 to the named Plaintiffs (for a total payment of $4,000).

7.4    If awarded by the Court, Skidmore shall pay the attorneys' fees, costs, expenses, and/or service award to Plaintiffs, as set forth above in ¶¶ 7.2 and 7.3, within twenty-one (21) days

after the Effective Date. Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and the service award to Plaintiffs consistent with ¶¶ 7.2 and 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Administration of Claims**

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.2. Class Counsel and Skidmore shall be given reports as to both claims and distribution and have the right to review and obtain supporting documentation to the extent necessary to resolve claims administration issues. The Claims Administrator's and claims referee's, as applicable, determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth in ¶ 2.5. All claims agreed to be paid in full by Skidmore shall be deemed a Valid Claim.

8.2    Checks for Valid Claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

8.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise expressly allowed by law or the Settling Parties' written agreement, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Claims Administrator, claims referee, Skidmore, Released Persons, Class Counsel, Plaintiffs, Plaintiffs' Counsel, and/or Skidmore's counsel based on distributions of benefits to Settlement Class Members.

8.5     Information submitted by Settlement Class Members in connection with submitted claims under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, claims referee, Class Counsel, and counsel for Skidmore.

**9.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      Skidmore has not exercised its option to void the Settlement Agreement pursuant to ¶ 4.3;

c)      the Court has entered the Judgment granting Final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.11.

27

9.2     If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Class Counsel and counsel for Skidmore mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Class Counsel and to counsel for Skidmore a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement or the releases set forth in ¶¶ 6.1, 6.2, and 6.3 above are not approved by the Court, either preliminarily or finally, or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose; and (iii) any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service award shall constitute grounds for cancellation or termination of the Settlement Agreement.  Further, notwithstanding any statement in this Settlement Agreement to the contrary, Skidmore shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

28

## 10.    Miscellaneous Provisions

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.  It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth in the Settlement Agreement.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action related to the Incident that

may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5    The Settlement Agreement contains the entire understanding between Skidmore and Plaintiffs regarding the payment of the Litigation and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Skidmore and Plaintiffs in connection with the payment of the Litigation.  Except as otherwise provided herein, each party shall bear its own costs.  This Agreement supersedes all previous agreements made between Skidmore and Plaintiffs.  Any agreements reached between Skidmore, Plaintiffs, and any third party, are expressly excluded from this provision.

10.6    Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8    The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

10.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  No assignment of this Settlement Agreement will be valid without the other party's prior, written permission.

10.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11   As used herein, "he" means "he, she, or it"; "his" means "his, hers, or its"; and "him" means "him, her, or it."

10.12   All dollar amounts are in United States dollars (USD).

10.13   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive monetary settlement benefits.  All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until six (6) months after the Effective Date to request re-issuance by the Claims Administrator.

10.14   If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Skidmore shall have no obligation to make payments to the Settlement Class Member for expense

reimbursement under ¶ 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.15    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed by their duly authorized attorneys.

[*Signature blocks on next page*]

**AGREED TO BY:**

By: */s/  Philip J. Krzeski*

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: 405.235.1560
wbf@federmanlaw.com

**CHESTNUT CAMBRONNE PA**
Philip J. Krzeski
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: 612.339.7300
Facsimile: 612.336.2940
pkrzeski@chestnutcambronne.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: 858.209.6941
jnelson@milberg.com

Randi Kassan
100 Garden City Plaza
Garden City, NY 11530
Telephone: 212.594.5300
rkassan@milberg.com

*Counsel for Plaintiffs and the Putative Class*

By: /s/__*Peter Kobor*

Peter Kobor, Plaintiff

By: *Sarah Delaney Vero*

**SKIDMORE COLLEGE**
Sarah Delaney Vero
815 North Broadway
Saratoga Springs, NY 12866
Telephone: 518.580.5814
svero@skidmore.edu

By: */s/ Casie D. Collignon*

**BAKER & HOSTETLER LLP**
Casie D. Collignon
ccollignon@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO  80202
Telephone:303.861.0600
Facsimile:303.861.7805

Robyn M. Feldstein
45 Rockefeller Plaza
New York, NY  10111
Telephone:212.589.4200
Facsimile:212.589.4201
rfeldstein@bakerlaw.com

*Counsel for Defendant Skidmore College*

4887-3214-6653.1

By: /s/ _____

Mary Cogan, Plaintiff

# Exhibit A

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

## COURT APPROVED LEGAL NOTICE

*Kobor, et al v. Skidmore College*, Case No. 1:23-cv-01392-MAD-DJS (N.D.N.Y)

**If you were notified of a cybersecurity incident in or around September 15, 2023 by Skidmore College, you may be eligible for benefits from a class action settlement.**

A proposed Settlement has been reached with Defendant Skidmore College ("Defendant") related to a cybersecurity incident (the "Cybersecurity Incident"). The lawsuit, which is pending in the U.S. District Court for the Northern District of New York, alleges that Defendant did not adequately protect certain personal information. Defendant denies any wrongdoing. No judgment or determination of wrongdoing has been made.

**Who is Included?** Records indicate you are included in this Settlement as a Class Member. The Class includes the U.S. residents who were notified in or around September 15, 2023, via written notice, that their personal information may have been involved in the Cybersecurity Incident.

**What does the Settlement Provide?** The Settlement provides compensation for lost time in addressing issues related to the Cybersecurity Incident (up to 8 hours at $20.00/hour, but only if at least one (1) full hour was spent addressing issues related to the Cybersecurity Incident), payment of out-of-pocket expenses related to the Cybersecurity Incident (up to $3,500.00 per person), and two years of credit monitoring; attorneys' fees and expenses; and costs of notice and administration. ALL BENEFITS (AND THE AMOUNT PAID TO SETTLEMENT CLASS MEMBERS UNDER THIS SETTLEMENT) MAY BE HIGHER OR LOWER DEPENDING ON THE TOTAL AMOUNT OF APPROVED CLAIMS.

**How To Get Benefits:** You must submit a claim form, including any required documentation. The deadline to file a claim form is Month XX, 2024. You can easily file a claim online at [WEBSITE].You can also get a paper claim form at the website or by calling toll free 1-xxx-xxxx, and file by mail. When filing your claim use your unique Class Member ID (printed on the back of this notice).

**Your Other Options:** If you file a claim, object to the Settlement and/or Attorneys' Fees and Expenses, or do nothing, you are choosing to stay in the Settlement Class. You will be legally bound by all orders of the Court and you will not be able to start, continue, or be part of any other lawsuit against Defendant arising out of the Cybersecurity Incident. If you don't want to be legally bound by the Settlement or receive any benefits from it, you must exclude yourself by Month XX, 2024. If you do not exclude yourself, you may object to the Settlement and/or Attorneys' Fees and Expenses by Month XX, 2024. The Court has scheduled a hearing in this case for Month XX, 2024, to consider whether to approve the Settlement and Attorneys' Fees and Expenses, as well as any objections. For complete information about all of your rights and options, as well as claim forms, the Long Form Notice and Settlement Agreement, visit [WEBSITE], or call 1-xxx-xxxx.

**For more information, call toll-free [InsertPhoneNumber] or visit [InsertWebsiteLink] and read the detailed Notice.**

Docusign Envelope ID: A5D0B0D2-FF4A-4289-AB59-511A786BE50I

# Exhibit B

**NOTICE OF CLASS ACTION SETTLEMENT**

## NORTHERN DISTRICT OF NEW YORK
*Kobor, et al v. Skidmore College*
Case No. 1:23-cv-01392-MAD-DJS

# If you were notified of a cybersecurity incident in or around September 15, 2023, by Skidmore College, you may be eligible for benefits from a class action settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

A settlement has been proposed (the "Settlement" or "Settlement Agreement") with Skidmore College ("Defendant") in a class action lawsuit arising out of a security incident impacting Defendant (the "Incident").  The Settlement provides benefits as described in this notice.  If you are a Settlement Class Member, there are benefits available to you from the proposed settlement. The settlement includes all persons residing in the United States who were notified in or around September 15, 2023, via written notice, that their personally identifiable information ("PII") may have been involved in the cybersecurity Incident. **The easiest way to submit a claim under the Settlement is online at [[WEBSITE]].**

The settlement provides payments and other benefits to people who submit valid claims for lost time, certain documented out-of-pocket expenses, and credit monitoring services. More specifically, the settlement relief includes:

- Reimbursement of Attested Lost Time: If you spent time addressing issues relating to the cybersecurity Incident, you can make a claim for reimbursement for up to 4 total hours of time at a rate of $20.00/hour, but only if at least one (1) full hour was spent dealing with the Incident. To submit a valid claim, you must represent that the time and/or effort spent was incurred as a result of the cybersecurity Incident.

    Settlement Class Members may also seek reimbursement for up to four (4) additional hours if sufficiently documented (calculated at the rate of $20 per hour).  Settlement Class Members may receive up to four (4) hours of additional lost time if the Settlement Class Member: (i) attests that any claimed lost time was spent responding to issues raised by the Incident; and (ii) provides documentation supporting how the claimed lost time was spent and how it was related to the Incident.  Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses and are subject to the $3,500.00 Documented Out-of-Pocket Expenses cap.

- Credit Monitoring: With this Settlement, you can submit a claim for two years of credit monitoring protection services.

- Compensation for Documented Out-of-Pocket Expenses: If you have incurred actual, unreimbursed expenses as a result of the cybersecurity Incident, you can make a claim for reimbursement for up to $3,500.00.  Out-of-Pocket Expenses include: (i) unreimbursed bank or credit card fees; (ii) long distance phone charges (only if charged by the minute); (iii) long distance or cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and/or

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

(vii) credit monitoring or other identity theft monitoring purchased by Settlement Class Members between February 15, 2023 and the Notice Date. You must include documentation to support that the out-of-pocket expenses were the result of the cybersecurity Incident.

**Your legal rights are affected even if you do nothing.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **File a claim for Settlement Benefits** | You must submit a claim form in order to receive any of the above-listed benefits.  Your claim form must include your Unique Class Member ID found on the postcard notice sent to you or available from the Settlement Administrator. For more detailed information, see Question 9. | (90) days from date of Notice |
| **Exclude yourself from the Settlement** | You can exclude yourself from the Settlement by informing the Settlement Administrator that you want to "opt-out" of the Settlement.  If the Settlement becomes final, this is the only option that allows you to retain your rights to separately sue Defendant (or any Released Parties) for claims related to the cybersecurity Incident.  If you opt-out, you may not make a claim for benefits under the Settlement. For more detailed information, see Question 16. | 60 days from date of Notice |
| **Object to or comment on the Settlement** | You may object to the Settlement by writing to explain to the Court why you don't think the Settlement should be approved. If you object, you will remain a Settlement Class Member, and if the Settlement is approved, you will be eligible for the benefits of the Settlement and give up your right to sue Defendant (or any Released Parties) for claims related to the cybersecurity Incident, as described in the Settlement Agreement available on the Settlement website, [[WEBSITE]]. For more detailed information, see Question 17. | 60 days from date of Notice |
| **Do Nothing** | If you do nothing, you will not be entitled to any of the above-listed benefits.  If the Settlement becomes final, you will give up your rights to sue Defendant (or any Released Parties) separately for claims relating to the cybersecurity Incident or to continue to pursue any such claims you have already filed. | |

These rights and options – **and how and when you need to exercise them** – are explained in this notice.

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

The Court that is presiding over this case still has to decide whether to grant final approval of the settlement. Payments will only be made after the Court grants final approval of the settlement and after any appeals are resolved.

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

4862-5253-8317.3

| WHAT THIS NOTICE CONTAINS |
|:-:|

**BASIC INFORMATION**.................................................................................**Page 5**
1.  What is this notice, and why did I get it?
2.  What is this lawsuit about?
3.  Why is this a class action?
4.  Why is there a Settlement?

**WHO IS PART OF THE SETTLEMENT?**..........................................................**Page 6**
5.  How do I know if I am part of the Settlement?

**THE SETTLEMENT BENEFITS** .....................................................................**Page 6**
6.  What does the Settlement provide?
7.  How will the Settlement help me protect against future fraud?

**HOW DO YOU RECEIVE A BENEFIT?** ...........................................................**Page 7**
8.  How do I file a claim for Credit Monitoring, Out-of-Pocket Expenses, or Lost Time?
9.  How will claims be decided?
10. When will I get my payment?

**LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT**.................................**Page 8**
11. What am I giving up as part of the Settlement?

**THE LAWYERS REPRESENTING YOU** ...........................................................**Page 9**
12. Do I have a lawyer in this case?
13. How will the lawyers be paid?
14. Will the Settlement Class Representatives receive additional money?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**..........................................**Page 9**
15. How do I exclude myself from the Settlement?

**OBJECTING TO THE SETTLEMENT**..............................................................**Page 10**
16. How do I tell the Court that I like or do not like the Settlement Agreement?

**GETTING MORE INFORMATION** ................................................................**Page 12**
17. How do I get more information?

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

4862-5253-8317.3

# BASIC INFORMATION

| **1. What is this notice, and why did I get it?** |
|---|

A Court authorized this notice to inform you how you may be affected by this proposed settlement. This notice describes the lawsuit, the general terms of the proposed settlement and what it may mean to you. This notice also explains how to participate in, or exclude yourself from, the Settlement if your information was potentially involved in the cybersecurity Incident.

For information on how to determine if you are a Settlement Class Member, and therefore eligible for benefits under this settlement, see Question 5.

| **2. What is this lawsuit about?** |
|---|

This lawsuit involves claims that Defendant is responsible for a cybersecurity incident involving the unauthorized access to Skidmore College's filesharing system that was the subject of notices provided by Defendant in or around September 15, 2023 (the "Incident").

Defendant denies these claims and any wrongdoing. No court or other judicial entity has made any judgment or other determination of any wrongdoing by any Defendant.

| **3. Why is this a class action?** |
|---|

In a class action, one or more people called "class representatives" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." Because this is a class action settlement, even persons who did not file their own lawsuit can obtain benefits provided under the settlement, except for those individuals who exclude themselves from the settlement class by the deadline.

| **4. Why is there a Settlement?** |
|---|

The Court has not decided in favor of Plaintiffs or Defendant. Instead, both sides agreed to a settlement after arms-length settlement negotiations. Settlements avoid the costs and uncertainty of a trial and related appeals, while more quickly providing benefits to members of the settlement class. The class representatives appointed to represent the class and the attorneys for the settlement class ("Class Counsel," see Question 13) believe that the settlement is in the best interests of the Settlement Class Members.

**Questions? Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

# WHO IS PART OF THE SETTLEMENT?

| 5. How do I know if I am part of the Settlement? |
| --- |

You are a Settlement Class Member if you reside in the United States and were notified in or around September 15, 2023, via written notice, that your personal information may have been involved in the cybersecurity Incident.

If you are not sure whether you are included in the settlement, you may contact the Settlement Administrator at 1-888-8888 or [address] with questions.

# THE SETTLEMENT BENEFITS

| 6. What does the Settlement provide? |
| --- |

The Settlement provides:

- Compensation for lost time addressing issues related to the cybersecurity Incident;
- Compensation for unreimbursed, out-of-pocket expenses;
- Two years of credit monitoring (Question 7);
- Payment of costs of notifying Settlement Class Members and administering the Settlement;
- Payment of Attorneys' Fees, costs, expenses, and service awards as approved by the Court (Question 14).

**Settlement Benefit: Cash Payment for Lost Time**: Settlement Class Members who spent time researching or remedying issues related to the cybersecurity Incident or for any actions that were taken in response to receiving a Notice of Security Incident from Defendant can make a claim for reimbursement for up to 4 hours of time at a rate of $20.00/hour, but only if at least one (1) full hour was spent dealing with the Incident. Settlement Class Members may also seek reimbursement for up to four (4) additional hours if sufficiently documented (calculated at the rate of $20 per hour). Specifically, you must include an attestation that any claimed lost time was spent responding to issues raised by the Incident and provide documentation to support the same.

**Settlement Benefit: Payment for Unreimbursed Out-of-Pocket Expenses**: Settlement Class Members that have documented out-of-pocket losses as a result of the cybersecurity Incident can make a claim for reimbursement for up to $3,500.00. Out-of-Pocket Expenses that are eligible for reimbursement include the following: (i) unreimbursed bank or credit card fees; (ii) long distance phone charges (only if charged by the minute); (iii) long distance or cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and/or (vii) credit monitoring or other identity theft monitoring purchased by Settlement Class Members between February 15, 2023 and the Notice Date.

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

To claim reimbursement for Out-of-Pocket Expenses, you must submit documentation supporting this claim, including, but not limited to credit card statements, bank statements, invoices, telephone records, and receipts.

**Settlement Benefit: Credit Monitoring**: You can submit a claim for two years of credit monitoring protection services.

* * *

The Settlement Administrator will decide if your claim is valid. Only valid claims will be paid/approved. The deadline to file a claim for Lost Time, Out-of-Pocket Expenses, and/or Credit Monitoring is **[CLAIMS DEADLINE]**. **The amount of your claim may be reduced or increased depending on the total amount of claims.** *See* **Question 8.**

| 7.  How will the Settlement help me protect against future fraud? |
| --- |

Settlement Class Members can submit a claim for two years of credit monitoring protection.

The deadline to file a claim for Credit Monitoring is **[CLAIMS DEADLINE]**. If you submit a valid claim form and elect to enroll in Credit Monitoring, you will receive enrollment instructions by email after the settlement is final.

# HOW DO YOU RECEIVE A BENEFIT?

| 8.  How do I file a claim for Credit Monitoring, Out-of-Pocket Expenses, or Lost Time? |
| --- |

To file a claim for credit monitoring, reimbursement for Lost Time, or Out-of-Pocket Expenses, you will either need to file a claim form with your Unique Class Member ID, which can be found on the post-card notice you received or by contacting the Settlement Administrator. **The easiest way to submit a claim form is online, by filling out the form at [[WEBSITE]]**. You can also download a paper claim form and return a completed claim form by mail addressed to:

INSERT

The deadline to file a claim is **[CLAIMS DEADLINE]** (this is the last day to file online and the postmark deadline for mailed claims).

| 9.  How will claims be decided? |
| --- |

The Settlement Administrator will decide whether the information provided on each Claim Form is complete and valid. The Settlement Administrator may require additional information. If you do not provide the additional information in a timely manner the claim will be considered invalid and will not be paid.

Approved Claims are those submitted in a timely manner and found to be valid by and in an amount approved by the Settlement Administrator.

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

| 10. When will I get my payment? |
| --- |

The Court will hold a hearing on [**FINAL APPROVAL DATE**] to decide whether to approve the Settlement Agreement. The hearing may be remote or in-person so check the website for details. If the Court approves the Settlement Agreement, there may still be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

# LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT

| 11. What am I giving up as part of the Settlement? |
| --- |

If you make a claim under the Settlement, or if you do nothing, you will be releasing all of your claims relating to the cybersecurity Incident against Defendant and any Released Parties when the Settlement becomes final. By releasing your legal claims, you are giving up the right to file, or to continue to pursue, separate legal claims against or seek further compensation from Defendant or any Released Parties for any harm related to the cybersecurity Incident or the claims alleged in the lawsuits—whether or not you are currently aware of those claims.

Unless you exclude yourself from the Settlement (see Question 15), all of the decisions by the Court will bind you. That means you will be bound to the terms of the Settlement and accompanying court orders, and cannot bring a lawsuit or be part of another lawsuit against Defendant or any Released Parties regarding the cybersecurity Incident.

Paragraph 6 of the Settlement Agreement defines the claims and parties that will be released by Settlement Class Members who do not exclude themselves from the Settlement. You can access the Settlement Agreement and read the specific details of the legal claims being released at [[WEBSITE]].

If you have any questions, you can contact the Settlement Administrator (*see* Question 17).

# THE LAWYERS REPRESENTING YOU

| 12. Do I have a lawyer in this case? |
| --- |

Yes. The Court appointed William B. Federman of Federman & Sherwood, Philip J. Krzeski of Chestnut Cambronne PA, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Co-Lead Class Counsel. You will not be charged by these lawyers for their work on this case. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 13. How will the lawyers be paid? |
| --- |

Class Counsel has undertaken this case on a contingency-fee basis, meaning they have paid for all of the expenses in the case and have not been paid any money in relation to their work on this

**Questions? Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

case. Accordingly, Class Counsel will ask the Court to award them Attorneys' Fees, costs, and expenses. The Court will decide the amount of fees and costs and expenses to be paid. You will not have to separately pay any portion of these fees yourself. Class Counsels' request for Attorneys' Fees and Costs (which must be approved by the Court) will be filed by **[DATE]** and will be available to view on the Settlement website at [[WEBSITE]].

<div style="background-color:gray;">

**14. Will the Settlement Class Representatives receive additional money?**

</div>

Subject to Court approval, Class Counsel will file a motion for approval of a service award in the amount of $2,000 to the named Plaintiffs (for a total payment of $4,000).

# EXCLUDING YOURSELF FROM THE SETTLEMENT

<div style="background-color:gray;">

**15. How do I exclude myself from the Settlement?**

</div>

If you are a member of the Settlement Class, you may exclude yourself from the Settlement (also known as "opting out"). If you exclude yourself, you will lose any right to participate in the Settlement, including any right to receive the benefits outlined in this notice.

If you decide on this option, you may keep any rights you have, if any, against Defendant, and you may file your own lawsuit against Defendant based upon the same legal claims that are asserted in this lawsuit, but you will need to find your own attorney at your own cost to represent you in that lawsuit. If you are considering this option, you may want to consult an attorney to determine your options.

**IMPORTANT:** You will be bound by the terms of the Settlement Agreement unless you submit a timely and signed written request to be excluded from the Settlement. To exclude yourself from the Settlement you must do so online at [WEBSITE] by **[DATE]** or mail a "request for exclusion," postmarked no later than **[DATE]**, to:

<p style="text-align:center;"><strong>INSERT</strong></p>

The statement must contain the following information:

    (i)   Identify the case name of the Action;
    (ii)  Identify the name and address of the individual seeking exclusion from the Settlement;
    (iii) Be personally signed by the individual seeking exclusion (or his/her parent or legal guardian, if a minor child);
    (iv) Include a statement clearly indicating the individual's intent to be excluded from the Settlement; and

<p style="text-align:center;"><strong>Questions? Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX</strong></p>

(v) Request exclusion only for that one individual whose personal signature appears on the request (or, in the case of a minor, the personal signature of the minor's parent or legal guardian appears on the request).

**If you do not comply with these procedures and the deadline for exclusions, you will lose any opportunity to exclude yourself from the Settlement, and your rights will be determined in this lawsuit by the Settlement Agreement if it is approved by the Court.**

## OBJECTING TO THE SETTLEMENT

### 16.  How do I tell the Court that I like or do not like the Settlement Agreement?

If you are a Settlement Class Member, you have the right to tell the Court what you think of the Settlement. You can object to the Settlement if you don't think it is fair, reasonable, or adequate, and you can give reasons why you think the Court should not approve it. You can't ask the Court to order a larger settlement; the Court can only approve or deny the Settlement as it is.

To object, you must send a written objection stating that you object to the Settlement. Your objection must include:

(i)    The case name and number of the Action;

(ii)   The name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

(iii)  A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(iv)   A statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection;

(v)    A statement of the specific grounds for the objection; and

(vi)   A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

To be considered by the Court, your written objection must be filed electronically with the Court by [**DATE**] or mailed, postmarked no later than [**DATE**], to the following addresses:

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

| COURT | DEFENDANT'S COUNSEL | LEAD CLASS COUNSEL |
|---|---|---|
| U.S. District Court<br>Northern District of New York<br>PO Box 7367<br>Syracuse, NY 13261 | **BAKER & HOSTETLER LLP**<br><br>Casie D. Collignon<br>1801 California Street, Suite 4400<br>Denver, CO  80202<br><br>and to:<br><br>Robyn M. Feldstein<br>45 Rockefeller Plaza<br>New York, NY  10111 | **FEDERMAN & SHERWOOD**<br><br>William B. Federman<br>10205 N. Pennsylvania Avenue<br>Oklahoma City, OK 73120<br><br>**CHESTNUT CAMBRONNE PA**<br><br>Philip J. Krzeski<br>100 Washington Avenue South, Suite 1700<br>Minneapolis, MN 55401<br><br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br><br>John J. Nelson<br>402 W. Broadway, Suite 1760<br>San Diego, CA 92101 |

**If you do not comply with these procedures and the deadline for objections, you may lose any opportunity to have your objection considered at the Final Approval Hearing or otherwise to contest the approval of the settlement or to appeal from any orders or judgments entered by the Court in connection with the proposed settlement. You will still be eligible to receive settlement benefits if the settlement becomes final even if you object to the settlement.**

The Court has scheduled a Final Approval Hearing to listen to and consider any concerns or objections from Settlement Class Members regarding the fairness, adequacy, and reasonableness of the terms of the Settlement Agreement. That hearing is currently scheduled to take place on **[DATE and TIME]** before the Honorable Mae Avila D'Agostino. Either at the United States District Court for the Northern District of New York located at the James M. Hanley Federal Building and U.S. Courthouse, 100 S. Clinton St., Syracuse, NY 13261 or via a remote location. This hearing date, time, and location may be moved. Please refer to the Settlement website (**WEBSITE**) for notice of any changes.

# GETTING MORE INFORMATION

| 17.  How do I get more information? |
|---|

If you have questions about this notice or the Settlement, you may go to the Settlement website at **[WEBSITE]** or call **[PHONE]**.  You can also contact the Settlement Administrator by mailing

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

a letter to the Settlement Administrator, [INSERT ADDRESS], for more information or to request that a copy of this document be sent to you in the mail.  If you wish to communicate directly with Class Counsel, you may contact them.  You may also seek advice and guidance from your own private lawyer at your own expense if you wish to do so.

This notice is only a summary of the lawsuit and the Settlement.  Other related documents can be accessed through the Settlement website.  If you have questions about the proposed settlement or wish to receive a copy of the Settlement Agreement but do not have access to the Internet to download a copy online, you may contact the Settlement Administrator. The Court cannot respond to any questions regarding this notice, the lawsuit, or the proposed settlement.

*Please do not contact the Court, its Clerks, or Defendant.*

**Questions?  Visit [[WEBSITE]] or Call 1-XXX-XXX-XXXX**

# Exhibit C

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

# CLAIM FORM FOR CYBERSECURITY INCIDENT BENEFITS

*Kobor, et al v. Skidmore College,*
Case No. 1:23-cv-01392-MAD-DJS (N.D.N.Y.)

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **[DUE DATE]** AT **[WEBSITE]** OR FILE BY MAIL POSTMARKED BY **[due date]**.

*You **must** use this form to make a claim for lost time payments, out of pocket loss payments, and free credit monitoring.*

Questions? Call **1-888-8888** or visit the website, **[WEBSITE]**

.

## CLASS MEMBER INFORMATION

Full Name: _____

Parent or Legal Guardian Full Name (if submitting on behalf of a minor child): _____

Mailing Address: _____

City: _____    State: _____    ZIP: _____

Telephone Number: _____

Email Address: _____
(This field is required to receive credit monitoring. If provided, we will also communicate with you about your claim primarily by email.)

Unique Claim Form Identifier: _____

*If you received a notice of this Settlement by U.S. mail, your Unique Claim Form Identifier is on the envelope or postcard. If you misplaced your notice, please contact the claim administrator at 1-888-8888 or* **[ADDRESS]**. *If you do not include either a Unique Claim Form Identifier your claim will be denied.*

## SETTLEMENT OVERVIEW

1

LEGAL02442301444:8

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

<u>Compensation for Out-of-Pocket Expenses</u>: If you have incurred actual, unreimbursed expenses as a result of the cybersecurity Incident, you can make a claim for reimbursement for up to $3,500.00. Out-of-Pocket Expenses include: (i) unreimbursed bank or credit card fees; (ii) long distance phone charges (only if charged by the minute); (iii) long distance or cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and/or (vii) credit monitoring or other identity theft monitoring purchased by Settlement Class Members between February 15, 2023 and the Notice Date. You must include documentation to support that the out-of-pocket expenses were the result of the cybersecurity Incident.

<u>Compensation for Lost Time</u>: If you spent time addressing issues relating to the cybersecurity Incident, you can make a claim for reimbursement for up to 4 total hours of time at a rate of $20.00/hour, but only if at least one (1) full hour was spent dealing with the Incident. To submit a valid claim, you must represent that the time and/or effort spent was incurred as a result of the cybersecurity Incident. Settlement Class Members may also seek reimbursement for up to four (4) additional hours if sufficiently documented (calculated at the rate of $20 per hour). Settlement Class Members may receive up to four (4) hours of additional lost time if the Settlement Class Member: (i) attests that any claimed lost time was spent responding to issues raised by the Incident; and (ii) provides documentation supporting how the claimed lost time was spent and how it was related to the Incident. Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses and are subject to the same $3,500 cap.

<u>Credit Monitoring</u>: With this Settlement, you can submit a claim for two years of credit monitoring protection services.

**ALL BENEFITS (AND THE AMOUNT PAID TO SETTLEMENT CLASS MEMBERS UNDER THIS SETTLEMENT) MAY BE HIGHER OR LOWER DEPENDING ON THE TOTAL AMOUNT OF APPROVED CLAIMS.**

**Failure to provide all required information will result in your claim being rejected by the Settlement Administrator.**

1. Were you sent a written notice that your information may have been involved in the cybersecurity Incident?

    Yes ☐ *(Proceed to Question 3)* No ☐ *(Proceed to Question 2)*

**CLAIM FOR CREDIT MONITORING**

3. Do you wish to receive two years of credit monitoring protection services? [Note you must provide a valid email address above to receive this benefit]

    Yes ☐ *(Please include your email on the first page and proceed to Question 4)*

    No ☐ *(Proceed to question 4).*

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

## CLAIM FOR LOST TIME PAYMENT

4. Did you spend time addressing issues related to the cybersecurity Incident?

Yes ☐ (*Proceed to Question 5*) No ☐ (*Please proceed to Question 6*)

5. If you selected "Yes" for Question 4, please fill out the below statement indicating how many hours you spent addressing issues related to the cybersecurity Incident.

I spent _____ **total hours addressing issues related to the cybersecurity Incident to be reimbursed at a rate of $20.00/hour.**

*Reminder: If you are seeking compensation for more than 4 hours of lost time, you must include supporting documentation that is not self-prepared with this claim form. Failure to submit supporting documentation will result in denial of your claim for additional lost time.*

*Please proceed to Question 6.*

## CLAIM FOR REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES

6. Do you have documentation supporting that you experienced: (i) unreimbursed bank or credit card fees; (ii) long distance phone charges (only if charged by the minute); (iii) long distance or cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and/or (vii) credit monitoring or other identity theft monitoring charges incurred between February 15, 2023 and the Notice Date. You may submit a claim, with supporting documentation, for up to $3,500.00 in out-of-pocket expenses.

Yes ☐ (*Please complete the chart below and then proceed to Certification and Signature*) No ☐ (*You are not eligible to submit a claim for out-of-pocket expenses. Please proceed to Certification and Signature*)

3

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Bank fees incurred as a result the cybersecurity Incident | | | *Example: Account statement with fees incurred as a result of the cybersecurity Incident highlighted.* <br><br> *The description of the fees in the documentation must be specific enough to enable the settlement administrator to determine why the fees were incurred and you must explain why the fees were incurred as a result of the cybersecurity Incident.* |
| ☐ Long distance phone charges incurred as a result of the cybersecurity Incident | | | *Example: Phone bills with long distance telephone calls made as a result of the cybersecurity Incident, and corresponding charges, highlighted, along with an explanation of what the calls were for and why they were incurred as a result of the cybersecurity Incident.* <br><br> *You must explain who the calls were made to and why they were made as a result of the cybersecurity Incident. You must also provide sufficient documentation to demonstrate the amount you were charged for the specific calls that you made as a result of the cybersecurity Incident.* |
| ☐ Cell phone charges (only if charged by the minute) incurred as a result of the cybersecurity Incident | | | *Example: Cell phone bill with calls made as a result of the cybersecurity Incident, and corresponding charges, highlighted, along with an explanation of what the calls were for and why they were incurred as a result of the cybersecurity Incident.* <br><br> *You must explain who the calls were made to and why they were made as a result of the cybersecurity Incident. You must also provide sufficient documentation to demonstrate the amount you were charged for the specific calls that you made as a result of the cybersecurity Incident.* |

4

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Data charges (only if charged based on the amount of data used) incurred as a result of the cybersecurity Incident | | | *Example: Cell phone bill with data charges incurred as a result of the cybersecurity Incident, and corresponding charges, highlighted, along with an explanation of what the data charges are for and why they were incurred as a result of the cybersecurity Incident.*<br><br>*You must explain what activities the data charges correspond to and why they were incurred as a result of the cybersecurity Incident. You must also provide sufficient documentation to demonstrate the amount you were charged for the specific activities that incurred data charges that you undertook as a result of the cybersecurity Incident.* |
| ☐ Postage charges incurred as a result of the cybersecurity Incident | | | *Example: Receipts from the United States postal service or other shipping companies, along with an explanation of what you sent and why you sent it.*<br><br>*You must explain what you sent to incur the charges, to whom you sent it, and why you sent it as a result of the cybersecurity Incident.* |
| ☐ Gasoline charges for local travel incurred as a result of the cybersecurity Incident | | | *Example: Gasoline receipt for gasoline used driving to the police station to file a police report regarding the cybersecurity Incident. You are only entitled to claim reimbursement for the gasoline you used as a result of the cybersecurity Incident, which may be less than a full tank. You must describe where you drove, the distance you traveled, why the travel was connected to the cybersecurity Incident, and the portion of any gasoline receipt that you attribute to the trips that you made as a result of the cybersecurity Incident.* |

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Credit monitoring or other mitigating costs (such as costs associated with accessing, freezing, or unfreezing credit reports with any credit reporting agency) that were incurred on or after February 15, 2023 through the date of submission of this Claim Form | | | *Example: Receipts or account statements reflecting charges incurred to view a credit report.* |
| ☐ (Check this box only if you declare) I declare that I was a Medicare beneficiary during the time period of February 15, 2023 through the date of submission of this Claim Form and I am seeking benefits in this Settlement related to emotional distress. If you were a Medicare beneficiary at any time during the period of February 15, 2023 to present and are seeking any reimbursement for emotional distress, please contact the Settlement Administrator at 1-888-888-8888 to provide additional information necessary for Medicare reporting requirements.\n\n*Leave this box unchecked if either:* (i) you were not a Medicare beneficiary during the time period of February 15, 2023 to the present; or (ii) if you were a Medicare beneficiary at any time during the period from February 15, 2023 through the date of submission of this Claim Form and are not seeking any reimbursement for emotional distress from this settlement. | | | |

6

Docusign Envelope ID: A5D0B0D2-FF4A-4209-AB5D-511A786BE501

## CERTIFICATION AND SIGNATURE

By submitting this Claim Form, I certify that I am a Settlement Class Member and am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments is true and correct. I do hereby swear (or affirm), under penalty of perjury, that the information provided above is true and accurate to the best of my knowledge and that any cash compensation or benefits I am claiming are based on losses or expenses I reasonably believe, to the best of my knowledge, were incurred as a result of the cybersecurity Incident.

I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced, depending on the type of claim and the determinations of the Settlement Administrator.

Name:  _____

Relationship to Settlement Class Member (if applicable):  _____

Signature:  _____

Date:  _____

7

# Exhibit D

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

PETER KOBOR, individually and on behalf :   CASE NO. 1:23-CV-01392-MAD-DJS
of all others similarly situated,         :

            Plaintiff,         :

                    :

      v.                 :

                    :

SKIDMORE COLLEGE,           :

            Defendant.       :

                    :

------------------------------------------------------ :

MARY COGAN, individually and on behalf :   CASE NO. 1:23-CV-01409-MAD-DJS
of all others similarly situated,         :

            Plaintiff,         :

                    :

      v.                 :

                    :

SKIDMORE COLLEGE,           :

            Defendant.       :

------------------------------------------------------X

## [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter is before the Court for consideration of whether the Settlement reached by the Parties should be preliminarily approved, the proposed Settlement Class preliminarily certified, and the proposed plan for notifying the Settlement Class approved. Having reviewed the proposed Settlement, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, and the

proposed notice plan approved.[1]   Accordingly, good cause appearing in the record, **IT IS**

**HEREBY ORDERED THAT**:

### Provisional Certification of The Settlement Class

(1)    The Court provisionally certifies the following Settlement Class:

"All persons who were sent written notification by Skidmore that their Private Information was potentially compromised as a result of the Incident discovered by Skidmore in February 2023."  The Settlement Class specifically excludes: (i) Skidmore, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge.
This Settlement Class is provisionally certified for purposes of settlement only.

(2)  The Court determines that for settlement purposes the proposed Settlement Class meets

all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is

so numerous that joinder of all members is impractical; that there are common issues of law and

fact; that the claims of the class representatives are typical of absent class members; that the class

representatives will fairly and adequately protect the interests of the class as they have no interests

antagonistic to or in conflict with the class and have retained experienced and competent counsel

to prosecute this matter; that common issues predominate over any individual issues; and that a

class action is the superior means of adjudicating the controversy.

(3)    Plaintiffs Peter Kobor and Mary Cogan are designated and appointed as the

Settlement Class Representatives.

(4)    William B. Federman of Federman & Sherwood, Philip J. Krzeski of Chestnut

Cambronne PA, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC, who

---

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

4860-1330-5048.1

were previously appointed by the Court as Interim Co-Lead Class Counsel, are designated as Class Counsel pursuant to Fed. R. Civ. P. 23(g). The Court finds that Mr. Federman, Mr. Krzeski, and Mr. Nelson are experienced and will adequately protect the interests of the Settlement Class.

## Preliminary Approval of the Proposed Settlement

(5)  Upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate, otherwise meets the criteria for approval, and warrants issuance of notice to the Settlement Class. Accordingly, the proposed Settlement is preliminarily approved.

## Final Approval Hearing

(6)  A Final Approval Hearing shall take place before the Court on _____, 2024, at _____ a.m./p.m. at James T. Foley United States Courthouse, 445 Broadway, Albany, New York 12207, to determine, among other things, whether: (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and, in accordance with the Settlement's terms, all claims in the Consolidated Amended Complaint and Action should be dismissed with prejudice; (c) Settlement Class Members should be bound by the releases set forth in the Settlement; (d) the proposed Final Approval Order and Judgment should be entered; and (e) the application of Class Counsel for an award of attorneys' fees, costs, expenses, and service awards should be approved. Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(7)  Class Counsel shall submit their application for Attorneys' Fees, Expenses, and Service Awards no later than fourteen (14) days before the Objection Deadline.

(8)  Any Settlement Class Member that has not timely and properly excluded itself from the Settlement in the manner described below, may appear at the Final Approval Hearing in person

3

or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Settlement Class Member that has elected to exclude themself from the Settlement shall be entitled to object or otherwise appear, and, further provided, that no Settlement Class Member shall be heard in opposition to the Settlement unless the Settlement Class Member complies with the requirements of this Order pertaining to objections, which are described below.

## Administration

(9)     Simpluris Inc. is appointed as the Settlement Administrator, with responsibility for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Member, and all other obligations of the Settlement Administrator as set forth in the Settlement Agreement.  All Administration and Notice Costs incurred by the Settlement Administrator will be paid by Skidmore, as provided in the Settlement Agreement.

## Notice to the Class

(10)     The Notice Plan, along with the Short Notice, Long Notice, and Claim Form attached to the Settlement Agreement as Exhibits A through C satisfy the requirements of Federal Rule of Civil Procedure 23 and due process and thus are approved.  Non-material modifications to these exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Plan and to perform all other tasks that the Settlement requires.

(11)     The Court finds that the form, content, and method of giving notice to the Settlement Class as described in the Notice Plan, Short Notice, Long Notice, and Claim Form:  (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d)

satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

## **Exclusions from the Class**

(12)     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated email address or Post Office box established by the Claims Administrator (or submit online via the settlement website), postmarked or submitted no later than 60 days after the Notice Date (the "Opt-Out Deadline"). Persons wishing to opt-out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted. The written notification must include the name of this Action (*Kobor, et al v. Skidmore College*, No. 1:23-cv-01392-MAD-DJS (N.D.N.Y.)); the full name and address of the individual seeking exclusion from the Settlement; be personally signed by the individual seeking exclusion; include a statement in the body of the document clearly indicating the individual's intent to be excluded from the Settlement; and request exclusion only for that one individual whose personal signature appears on the request. Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be bound by the Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

(13)     All individuals who submit valid and timely requests for exclusion from the Settlement shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement.

4860-1330-5048.1

(14)    The Settlement Administrator shall provide the parties with copies of all requests
for exclusion promptly upon receipt, a weekly report which includes a summary of the number of
requests for exclusion, and, within five (5) Business Days after the Opt-Out Deadline, a final list
of all individuals that have timely and validly excluded themselves from the Settlement Class in
accordance with the terms of the Settlement and herein.  Prior to the Final Approval Hearing, the
Settlement Administrator shall also prepare and execute a declaration identifying each individual
who timely and validly requested exclusion from the Settlement.

### Objections to the Settlement

(15)    A Settlement Class Member that complies with the requirements of this Order may
object to the Settlement.

(16)    No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or
other documents submitted by any Settlement Class Member shall be received and considered by
the Court, unless a written objection is submitted to the Court on or before the Objection Deadline,
which shall be 60 days after the Notice Date.  For the objection to be considered by the Court, the
written objection must include:

a.    the case name and number of the Action (*Kobor, et al v. Skidmore College,* No.
1:23-cv-01392-MAD-DJS (N.D.N.Y));

b.    the objector's full name, address, telephone number, and e-mail address (if any);

c.    information identifying the objector as a Settlement Class Member, including proof
that the objector is a member of the Settlement Class (e.g., copy of notice, copy of
original notice of the Incident);

d.    a written statement of all grounds for the objection, accompanied by any legal
support for the objection the objector believes applicable;

e.      the identity of any and all counsel representing the objector in connection with the objection;

f.      a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing;

g.      the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and

h.      a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.

(17)    In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether pro se or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

(18)    To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court and contain the case name and docket number *Kobor, et al. v. Skidmore College,* Case No. 1:23-cv-01392-MAD-DJS (N.D.N.Y.), no later than sixty (60) days from the Notice Date and served concurrently therewith upon at the addresses below.

| COURT | DEFENDANT'S COUNSEL | LEAD CLASS COUNSEL |
|---|---|---|
| U.S. District Court<br>Northern District of New York<br>PO Box 7367<br>Syracuse, NY 13261 | **BAKER & HOSTETLER LLP**<br><br>Casie D. Collignon<br>1801 California Street, Suite 4400<br>Denver, CO  80202<br><br>and to:<br><br>Robyn M. Feldstein<br>45 Rockefeller Plaza<br>New York, NY  10111 | **FEDERMAN & SHERWOOD**<br><br>William B. Federman<br>10205 N. Pennsylvania Avenue<br>Oklahoma City, OK 73120<br><br>**CHESTNUT CAMBRONNE PA**<br><br>Philip J. Krzeski<br>100 Washington Avenue South, Suite 1700<br>Minneapolis, MN 55401<br><br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br><br>John J. Nelson<br>402 W. Broadway, Suite 1760<br>San Diego, CA 92101 |

(19)    Any Settlement Class Member who fails to object to the Settlement in the manner described herein shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

**Claims Process and Distribution Plan**

(20)    The Settlement Agreement establishes a process for assessing and determining the validity and value of claims and a methodology for paying Settlement Class Members that submit a timely, valid Claim Form.  The Court preliminarily approves this process.

(21)    Settlement Class Members that qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement Agreement.

8

If the Settlement is finally approved, all Settlement Class Members that qualify for any benefit under the Settlement, but who fail to submit a claim in accordance with the requirements and procedures specified in the Settlement, including the Claim Form, shall be forever barred from receiving any such benefit.  Such Class Members, however, will in all other respects be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

## Termination of the Settlement and Use of this Order

(22)    This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement.  In such event, the Settlement shall become null and void and be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

(23)    If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against any Settlement Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims he or she may have in this Action or in any other lawsuit.

## Stay of Proceedings

(24)    Except as necessary to effectuate this Order, this matter and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

### Continuance of Final Approval Hearing

(25)    The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

### Actions By Settlement Class Members

(26)    The Court stays and enjoins, pending Final Approval of the Settlement, any actions, lawsuits, or other proceedings brought by Settlement Class Members against Defendant related to the Incident.

### Summary of Deadlines

(27)    The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.  Deadlines arising under the Settlement and this Order include but are not limited to the following:

| ACTION | DEADLINE |
|---|---|
| Notice Date | 45 days after entry of this Preliminary Approval Order |
| Motion for Attorneys' Fees and Expenses | 14 days prior to Objection Deadline |

| Claims Deadline | 90 days after Notice Date (*i.e.*, 135 days after entry of this Preliminary Approval Order) |
|---|---|
| Opt-Out / Exclusion Deadline | 60 days after Notice Date (*i.e.*, 105 days after entry of this Preliminary Approval Order) |
| Objection Deadline | 60 days after Notice Date (*i.e.*, 105 days after entry of this Preliminary Approval Order) |
| Final Approval Brief and Response to Objections Due | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | [No earlier than 90 days after Notice Date (*i.e.*, 135 days after entry of this Preliminary Approval Order)] |

IT IS SO ORDERED this _____ day of _____, 2024.

_____

4860-1330-5048.1

# Exhibit E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------X
PETER KOBOR, individually and on behalf  : CASE NO. 1:23-cv-01392-MAD-DJS
of all others similarly situated,                :
              Plaintiff,                         :
v.                                               :
SKIDMORE COLLEGE,                                :
              Defendant.                         :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
------------------------------------------------------ : CASE NO. 1:23-cv-01409-MAD-DJS

MARY COGAN, individually and on behalf  :
of all others similarly situated,                :
              Plaintiff,                         :
v.                                               :
SKIDMORE COLLEGE,                                :
              Defendant.                         :
                                                 :
                                                 :
                                                 :
                                                 :
------------------------------------------------------X
```

## [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

On _____ **[DATE]**, this Court entered an order granting preliminary

approval (the "Preliminary Approval Order") (Doc. _____) of the Settlement between (a) the

Settlement Class Representatives, on behalf of themselves and the Settlement Class; and

(b) Defendant Skidmore College ("Skidmore" or "Defendant") (collectively, the "Parties") as

memorialized in Exhibit __ (Doc. __) to Plaintiffs' Motion for Preliminary Approval of Class

Action Settlement;[1]

---

[1] The capitalized terms used in this Final Approval Order and Judgment shall have the same
meaning as defined in the Settlement Agreement except as may otherwise be indicated.

On _____ **[DATE]**,  pursuant to the notice requirements set forth in the Settlement and in the Preliminary Approval Order, the Settlement Class Members were apprised of the nature and pendency of the Action, the terms of the Settlement, and their rights to request exclusion, object, and/or appear at the Final Approval Hearing;

On _____ **[DATE]**, the Court held a Final Approval Hearing to determine, inter alia:  (1) whether the Settlement is fair, reasonable, and adequate; and (2) whether judgment should be entered dismissing all claims in the Consolidated Complaint with prejudice. Prior to the Final Approval Hearing, Class Counsel filed a declaration from the Settlement Administrator confirming that the Notice Plan was completed in accordance with the Parties' instructions and the Preliminary Approval Order.  Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Approval Hearing in support of or in opposition to the proposed Settlement and the award of Attorneys' Fees and Expenses.

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for Defendant, having reviewed all of the submissions presented with respect to the proposed Settlement, having determined that the Settlement is fair, adequate, and reasonable, and having considered the application made by Class Counsel for Attorneys' Fees and Expenses, and having reviewed the materials in support thereof, and good cause appearing:

**IT IS HEREBY ORDERED THAT:**

1.      The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class Members.  The Court also has personal jurisdiction over the Parties and the Settlement Class Members.

4862-9055-7914.1

2.      The Settlement was entered into in good faith following arms' length negotiations and is non-collusive.

3.      The Settlement is, in all respects, fair, reasonable, and adequate, is in the best interests of the Settlement Class, and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays and uncertainties, including as to the outcome, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class Members. The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the Settlement.

4.      This Court grants final approval of the Settlement, including, but not limited to, the releases in the Settlement and the plans for distribution of the settlement relief.  The Court finds that the Settlement is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class.  Therefore, all Settlement Class Members who have not opted out are bound by the Settlement and this Final Approval Order and Judgment.

5.      The Settlement and every term and provision thereof—including, without limitation, the Releases—are incorporated herein as if explicitly set forth herein and shall have the full force of an Order of this Court.

6.      The Parties shall effectuate the Settlement in accordance with its terms.

## **OBJECTIONS AND OPT-OUTS**

7.      _____ objections were filed by Settlement Class Members. The Court has considered all objections and finds the objections do not counsel against Settlement approval, and the objections are hereby overruled in all respects.

8.      All persons and entities who have not objected to the Settlement in the manner provided in the Settlement are deemed to have waived any objections to the Settlement, including, but not limited to, by appeal, collateral attack, or otherwise.

9.      A list of those putative individuals who have timely and validly elected to opt out of the Settlement in accordance with the requirements in the Settlement Agreement (the "Opt-Out Members") has been submitted to the Court in the Declaration of _____, filed in advance of the Final Approval Hearing.  That list is attached as **Exhibit A** to this Order.  The persons and/or entities listed in **Exhibit A** are not bound by the Settlement, or this Final Approval Order and Judgment, and are not entitled to any of the benefits under the Settlement.  Opt-Out Members listed in **Exhibit A** shall be deemed not to be Releasing Parties.

## <u>CLASS CERTIFICATION</u>

10.     For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies for settlement purposes only the following Settlement Class:

> All persons residing in the United States who were notified in or around September 15, 2023, via written notice, that their PII may have been involved in the Incident. The Settlement Class specifically excludes: (i) Defendant Skidmore University and its employees, officers, directors, affiliates, parents, subsidiaries, and any entity in which Defendant has a whole or partial ownership of financial interest; (ii) all individuals who make a timely election to be excluded from this Settlement using the correct protocol for opting out; (iii) any counsel and their respective staff appearing in this matter; and (iv) all judges assigned to hear any aspect of this litigation, their immediate family members, and their respective court staff.

11.     The Court determines that for settlement purposes the Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the class representatives are typical of absent class members; that the class representatives will fairly and adequately protect the interests of the class as they have no interests antagonistic to or in conflict with the class and have retained experienced and competent counsel

Docusign Envelope ID: A5D0B0D2-FF4A-4289-AB5D-511A786BE50F

to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

12.    The Court grants final approval to the appointment of Plaintiffs Peter Kobor and Mary Cogan as the Settlement Class Representatives.  The Court concludes that the Settlement Class Representatives have fairly and adequately represented the Settlement Class and will continue to do so.

13.    The Court grants final approval to the appointment of William B. Federman of Federman & Sherwood, Philip J. Krzeski of Chestnut Cambronne PA, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel.  The Court concludes that Class Counsel has adequately represented the Settlement Class and will continue to do so.

## NOTICE TO THE SETTLEMENT CLASS

14.    The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class Members of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement, their right to exclude themselves, their right to object to the Settlement and to appear at the final approval hearing, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable laws.

15.    The Court finds that Defendant has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND SERVICE AWARDS TO PLAINTIFFS

16.    The Court has considered Class Counsel's Motion for Attorneys' Fees and Expenses.

4862-9055-7914.1

17.     The Court awards Class Counsel $_____ as an award of attorneys' fees, costs and expenses to be paid in accordance with the Settlement, and the Court finds this amount of fees, costs, and expenses to be fair and reasonable.  This award of attorneys' fees, costs, and expenses, and any interest earned thereon, shall be paid by Skidmore separate and apart from any benefits provided to Settlement Class Members and the costs of notice and Claims Administration. This award of attorneys' fees, costs, and expenses is independent of the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.

18.     The Court awards each of the named Plaintiffs a service award in the amount of $_____(for a total payment of $_____).

19.     Skidmore shall pay the attorneys' fees, costs, expenses, and service awards to Plaintiffs within twenty-one (21) days after the date this Judgment and Final Order is entered.

## OTHER PROVISIONS

20.     The Parties to the Settlement shall carry out their respective obligations thereunder.

21.     Within the time set forth in the Settlement Agreement, the relief provided for in the Settlement shall be made available to the Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions of the Settlement Agreement.

22.     As of the Effective Date, all Releasing Parties, on behalf of themselves, their heirs, assigns, beneficiaries, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, unconditionally, and forever release and discharge any and all Released Claims against the Released Parties and any of their current, former, and future affiliates, parents, subsidiaries, representatives, officers, agents, directors, employees, contractors, shareholders, vendors, insurers,

4862-9055-7914.1

reinsurers, successors, assigns, and attorneys, except for claims relating to the enforcement of the Settlement or this Agreement.

23.      This Final Approval Order and Judgment, the Settlement, and all acts, statements, documents, and proceedings relating to the Settlement shall not be offered or received against Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Defendant with respect to the truth of any fact alleged by any Settlement Class Representative or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Defendant; *provided, however*, that nothing in the foregoing, the Settlement Agreement, or this Final Approval Order and Judgment shall be interpreted to prohibit the use of the Settlement Agreement or this Final Approval Order and Judgment in a proceeding to consummate or enforce the Settlement or this Final Approval Order and Judgment (including all releases in the Settlement and Final Approval Order and Judgment), or to defend against the assertion of any Released Claims in any other proceeding, or as otherwise required by law.

24.      This Final Approval Order and Judgment and the Settlement, and all acts, statements, documents, and proceedings relating to the Settlement are not, and shall not be construed as or received in evidence as an admission, concession, or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defense asserted by Defendant has any merit, or that damages recoverable in the Action would not have exceeded the total value of the Settlement.

25.      The Settlement (including without limitation the releases therein) shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or

4862-9055-7914.1

other proceedings as to Released Claims that are brought, initiated, or maintained by, or on behalf of, any Settlement Class Member who is not an Opt-Out Member or any other person subject to the provisions of this Final Approval Order and Judgment.

26.     The Court hereby dismisses the Action and the Consolidated Complaint and all claims therein on the merits and with prejudice, without fees or costs to any Party except as provided in this Final Approval Order and Judgment.

27.     Consistent with Paragraph 9.2 of the Settlement Agreement, if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Approval Order and Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever; the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement, the Preliminary Approval Order, and this Final Approval Order and Judgment shall cease to be of any force and effect, and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into the Settlement.  In such an event, the Parties shall be restored to their respective positions in the Action as if the Settlement Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).

28.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

29.     Without affecting the finality of this Final Approval Order and Judgment, the Court will retain exclusive jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of its terms at the request of any party, and resolution of any disputes that may arise relating in any way to the implementation of the Settlement or the implementation of this Final Order and Judgment.

**ENTERED:**


DATED: _____, 2024        By: _____

# **EXHIBIT 2**

# FEDERMAN & SHERWOOD
(An Association of Attorneys and Professional Corporations)

| | |
|---|---|
| 10205 N. PENNSYLVANIA AVENUE<br>OKLAHOMA CITY, OKLAHOMA 73120<br>TELEPHONE: 405-235-1560<br>FACSIMILE: 405-239-2112 | 212 W. SPRING VALLEY ROAD<br>RICHARDSON, TEXAS 75081<br>TELEPHONE: 214- 696-1100<br>FACSIMILE: 214-740-0112 |

## FIRM RESUME

**WILLIAM B. FEDERMAN.** <u>*Education*</u>:  Boston University (B.A., cum laude, 1979); University of Tulsa (J.D., 1982); Phi Alpha Delta (Treasurer, 1980-1982).  <u>*Admitted to practice*</u>: United States District Courts for the following Districts:  Western, Northern and Eastern, Oklahoma; Eastern, Northern, Southern, and Western, New York; Southern, Northern, Eastern and Western, Texas; Eastern and Western, Arkansas; District of Columbia; District of Colorado; Central and Northern Districts of Illinois; Northern District of Ohio; District of Nebraska; Eastern  and Western Districts of Michigan; Eastern District of Wisconsin; United States Court of Appeals for the following Circuits: First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh and Federal; and United States Supreme Court. <u>*Lectures/Publications*</u>: *"Class Actions, New Rules and Data Breach Cases,"* 40th *Annual OCBA Winter Seminar 2019; "A Case Study of Ethical Issues in Complex Litigation and Trends in Class Certification,"* 39th Annual OCBA Winter Seminar, 2018; *"Talkin' About Insurance Coverage and Complex Litigation: What Every Lawyer and Client Should Know,"* 38th Annual OCBA Winter Seminar, 2017; *"Securities Litigation: Using Data to Make the Case,"* by Bloomberg BNA, 2016; *"The Changing Landscape for Prosecution of Financial Claims Involving Insolvent Companies"* 37th Annual OCBA Winter Seminar, 2016; *"Current Status of Securities Class Actions: Where are the Courts Taking Us?"* Houston Bar Association, 2014.  *"Class & Derivative Actions and Securities Litigation,"* 2013 Annual Meeting of the American Bar Association; *"Litigation and Employment Law Update,"* Securities Industry Association Compliance and Legal Division; *"Inside a Disclosure Crisis"*, 30th Annual Northwest Securities Institute Annual Meeting and sponsored by the Washington Bar Association; *"Managing Directors' Liability,"* 3rd Annual Energy Industry Directors Conference and sponsored by Rice University; *"Executive Liability - 2009 D & O Market Trends,"* Chartis Insurance; *"Derivative Actions and Protecting the Corporation – Critical Issues in Today's Banking,"* Oklahoma Bar Association and the Oklahoma Bankers Association; *"Arbitration - What Is It?  Why Should a Lawyer Suggest or Use It?,"* Oklahoma Bar Association; *"The Attorney and Accountant as Targets in Failed Financial Institution Litigation,"* American Bar Association Trial Practice Committee; *"Effective Arbitration in the 1990's - Adapting to Build a Successful Practice,"* Oklahoma County Bar Association; *"Current Issues in Direct Investments and Limited Partnerships: The Litigation Scene From All Perspectives,"* American Bar Association Litigation Section; *"Stockbroker Litigation and Arbitration,"* Securities Arbitration Institute. Author: *"Who's Minding the Store: The Corporate Attorney-Client Privilege,"* 52 O.B.J. 1244, 1981; *"Potential Liability From Indirect Remuneration in Private Oil and Gas Offerings,"* 11 Sec. Reg. L.J. 135, 1983; *"Capitalism and Reality Meet in the Courts. . . Finally,"* 59 O.B.J. 3537, 1987; *"Class Actions, New Rules & Data Breach Cases,"* Annual OCBA Winter Seminar, 2019. <u>Membership</u>: Arbitration Panel, New York Stock Exchange; Federal Bar Association; Oklahoma County Bar Association (Committee on Professionalism, 1987-1990); Oklahoma Bar Association (Civil Procedure/Evidence Code, Lawyers Helping Lawyers Assistance Program and Rules of Professional Conduct Committees, 2017-2020); American Bar Association (Committee on Securities Litigation and Corporate Counsel); American Inns of Court (Barrister 1990-1993 and Master 2002-2004); inducted into the Outstanding Lawyers of America, 2003; received the Martindale-Hubbell peer review rating of AV Preeminent in both ethical standards and legal ability; recognized as one of the "Top Lawyers of 2013" for excellence and achievements in the legal community; Litigation Counsel of America (Trial Lawyer & Appellate Lawyer Honorary Society). <u>*Awards/Honors*</u>:  Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2018 (Global Law Experts Annual Awards); Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2019, 2020 (Corporate INTL Magazine); Oklahoma Super Lawyers list by Thomson Reuters – 2019;

Recognized for Exceptional Service and Outstanding Performance on behalf of the Federal Bar Association (Oklahoma City Chapter) Pro Bono Program – 2018-2019, 2020, Oklahoma Super Lawyer for 2022.

**STUART W. EMMONS. (In Memoriam)** *Education*: University of Oklahoma (J.D., 1987, with distinction); University of Oklahoma (B.B.A., Accounting, 1984, with distinction). *Admitted to practice*: 1987, Oklahoma; 1987, U.S. District Court for the Western District of Oklahoma; 1990, U.S. District Court for the Northern District of Oklahoma; 1992, U.S. Court of Appeals, Tenth Circuit; 1994, U.S. Court of Appeals, Eighth Circuit; U.S. Patent and Trademark Office; 2002, U.S. District Court for the District of Colorado; U.S. District Court for the Southern District of Texas; 2003, U.S. Court of Appeals, Second Circuit; 2004, U.S. District Court for the Northern District of Texas; U.S. Court of Appeals, Fifth Circuit; 2005, United States Supreme Court; 2005 U.S. Court of Appeals, Fourth Circuit; 2015, U.S. Court of Appeals, First Circuit; 2016, U.S. Court of Appeals, Ninth Circuit and U.S. Court of Appeals for the First Circuit.  1988-1989, Law Clerk to the Hon. Layn R. Phillips, U.S. District Court for the Western District of Oklahoma. *Published Decisions:  American Fidelity Assurance Company v. The Bank of New York Mellon,* 810 F.3d 1234 (10th Cir. 2016); *Paul Spitzberg v. Houston American Energy Corporation, et al.*, 758 F.3d 676 (5th Cir. 2014); *Patipan Nakkhumpun v. Daniel J. Taylor, et al.,* 782 F.3d 1142 (10th Cir. 2015); *Membership*: Oklahoma County and Oklahoma Bar Associations.

**SARA E. COLLIER.** *Education*:  Oklahoma Christian University (B.S. 2000); Oklahoma City University School of Law (J.D., 2004). *Admitted to practice*: Oklahoma; 2005, U.S. District Courts for the Western, Eastern and Northern Districts of Oklahoma; 2007, U.S. District Court for the Southern District of Texas; and 2007, United States Court of Appeals for Veterans Claims in Washington, DC. *Membership*: Oklahoma Bar Association, American Bar Association.

**KENNEDY M. BRIAN**. *Education:* University of Central Oklahoma (B.M. in Musical Theater, 2018, cum laude; Minor in Real Estate Finance), University of Oklahoma (J.D., 2021) (Dean's Honor Roll; Academic Achievement Award, Trial Techniques; American Indian Law Review). *Admitted to practice:* Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2023. *Membership:* Oklahoma Bar Association, Federal Bar Association, Junior League of Oklahoma City, and Oklahoma County Bar Association. Prior to joining Federman & Sherwood, Ms. Brian was actively involved in litigation on various estate planning, probate, and trust matters.

**JESSICA A. WILKES.** *Education:* Baylor University School of Law (J.D. 2021, with honors; Dean's Academic Excellence Full-Tuition Scholarship; Baylor Law Review, Technical Editor & Alumni Relations Coordinator; Research Assistant for Dean and Professors; Baylor Barrister Society). *Admitted to practice:* Oklahoma 2021, *Membership:* Oklahoma Bar Association; Oklahoma Bar Association, Women in Law; Friends of Trivera; Junior League of Oklahoma City. Prior to joining Federman & Sherwood, Ms. Wilkes actively practiced in litigation for the Oklahoma Attorney General's Office.

**TANNER R. HILTON.** *Education:* Texas A&M University (B.S. in Political Science, 2019); Oklahoma City University School of Law (J.D., 2022, Dean's List Spring of 2021; Order of the Barristers; Native American Law Student Association Moot Court Team, 2020-2022; CALI Award for Secured Transactions (2021). Mr. Hilton graduated from Oklahoma City University School of Law in May of 2022. *Admitted to practice:* Oklahoma 2023; U.S. District Court for Eastern District of Oklahoma, 2024; U.S. District Court for the Eastern District of Texas, 2024, U.S. District Court for the Southern District of Texas. *Membership:* Oklahoma Bar Association, Federal Bar Association and Order of the Barristers.

**ALEX J. EPHRAIM.** *Education:* University of Colorado – Denver (B.A. Political Science – Public Policy Analysis, 2018, summa cum laude, honor society, dean's list); University of Missouri – Kansas City School

FEDERMAN & SHERWOOD
Page 3

of Law (second century scholarship recipient, mock trial team, dean's list). *Admitted to practice:* Oklahoma 2021, U.S. District Court for the Eastern District of Oklahoma, U.S. District Court for the Western District of Oklahoma. *Membership:* Oklahoma Bar Association, Oklahoma County Bar Association. Prior to joining Federman & Sherwood, Mr. Ephraim actively practiced general civil litigation.

**JONATHAN J. HERRERA.** *Education*: University of Oklahoma College of Law (J.D., 2018, with Honors) (Dean's Honor Roll; Order of the Solicitors; Hispanic National Bar Association President; 3L Service Award; Moot Court Competition Team Captain; Top Speaker Award). *Admitted to practice:* Oklahoma 2018. *Membership:* Oklahoma Bar Association, Oklahoma County Bar Association, Hispanic National Bar Association, OBA Law School Committee, OBA Awards Committee.

### *OF COUNSEL:*

**JOHN CHARLES SHERWOOD.** *Education*: Texas Christian University, (BBA, magna cum laude, 1981); Baylor School of Law (J.D., 1984). *Areas of Practice*: Litigation. *Board Certified*: Civil Trial Law, Personal Injury Trial Law, Texas Board of Legal Specialization. *Organizations*: Texas Trial Lawyers, Association of Trial Lawyers of America, Dallas Trial Lawyers Association, Dallas Bar Association, Former Chairperson of the Solo and Small Firm Section of the Dallas Bar Association (1999), Member of the College of the State Bar of Texas and founding President of Citizens For a Fair Judiciary (Political Action Committee). *Licenses and Courts of Practice*: Member of the State Bar of Texas, National Board of Trial Advocacy, Licensed as a Certified Public Accountant by the Texas State Board of Public Accountancy, admitted to practice before the United States Tax Court, United States District Court, Northern District of Texas, United States Fifth Circuit Court of Appeals, and the United States Supreme Court. *Papers Presented*: *Other People's Money,* Presented to the Dallas Bar Association, Solo and Small Firm Section; *Recognition*: "Top Attorneys in Texas, Business Litigation," (2012).

**JOSHUA D. WELLS.** *Education*: Oklahoma Baptist University (B.A. 2004); Oklahoma City University College of Law (J.D. 2008) (Dean's List, Faculty Honor Roll, OCU American Trial Lawyers Association Moot Court Team, 2008; Staff Member, Law Review, 2006-07; Executive Editor, Law Review, 2007-08). *Admitted to practice*: Oklahoma, 2008; U. S. District Court for the Western District of Oklahoma; 2009, U.S. District Court for the Eastern District of Oklahoma; 2011, U.S. District Court for the Northern District of Oklahoma; 2012, U.S. Court of Appeals for the Tenth Circuit; 2016, U.S. Court of Appeals, Fourth Circuit. *Membership*: Oklahoma Bar Association; Federal Bar Association; American Bar Association. *Publication*: *Stuck in the Mire: The Incomprehensible Labor Law,* 34 Okla. City U.L. Rev. 131 (2009). *Experience*: Research Assistant to J. William Conger, General Counsel and Distinguished Lecturer of Law, Oklahoma City University and President of the Oklahoma Bar Association (2007-08). General Counsel for Reaching Souls International (2013-2016). Mr. Wells has significant experience in complex and class action litigation in various state and federal courts, with more than a decade of experience protecting consumer and shareholder rights. Mr. Wells knows how to efficiently prosecute complex cases to conclusion and practices in areas of estate planning, probate, and guardianships for both children and adults. He is the recipient of the Federal Bar Association Pro Bono Exceptional Service Award (2019) and is a leader in his church.

### *PARALEGALS:*

**SHARON J. KING.** Ms. King has worked in the legal community for over twenty years, after having worked in the securities and insurance industry for over fifteen years. She primarily works on insurance and civil litigation.

**JANE E. ADAMS.** Mrs. Adams has over 25 years of Administrative and Finance experience focusing her career on Human Resources.  Additionally, she has first-hand experience with FEMA response as well as government contractual administration.

**TIFFANY R. PEINTNER.** Mrs. Peintner has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Mrs. Peintner worked in patent law, oil and gas, probate, banking and real estate, family law, personal injury and insurance defense. She works in securities and civil litigation for the firm.

**FRANDELIND V. TRAYLOR.**  Mrs. Traylor has worked in the legal community for over fifteen years. She provides class action, securities and derivative litigation, and product liability support for the firm.

**LACRISTA A. BAGLEY.** Ms. Bagley has worked in the legal community for over twenty years. Before joining Federman & Sherwood, Ms. Bagley worked primarily in bankruptcy law that focused on Chapter 11's and corporate liquidations. She has previous experience with estate planning, family law, civil defense, personal injury and medical malpractice. She works in derivatives and civil litigation for the firm.

**TASHIA D. POORE.** Ms. Poore has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Ms. Poore worked in complex civil litigation, real estate and transactions, oil & gas, trusts and estate planning, banking and construction law. She works in the areas of shareholder derivative litigation, securities and complex litigation for the firm.

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| CONSUMER CLASS ACTIONS | COURT |
| --- | --- |
| Accreditation Commission for Education in Nursing (Data Breach) | USDC Northern District of Georgia |
| Albany ENT & Allergy | Supreme Courts of the State of New York, Albany County |
| Altice USA, Inc. (Data Breach) | USDC Southern District of New York |
| Artech, LLC (Data Breach) | USDC Northern District of California |
| AssistRx, et al (Data Breach) | USDC Middle District of Florida |
| AT&T Services Inc. | USDC Northern District of Texas |
| Avem Health Partners, Inc. (Data Breach) | USDC Western District of Oklahoma |
| BHI Energy Services | USDC District of Massachusetts |
| Brinker International, Inc. (Chili's) (Data Breach) | USDC Middle District of Florida |
| Bryan Cave Leighton Paisner LLP Data Breach Litigation | USDC Northern District of Illinois |
| Burgerville, LLC (Data Breach) | Circuit Court, State of Oregon, Multnomah County |
| Carvin Wilson Software, LLC (Data Breach) | USDC District of Arizona |
| CentralSquare Technologies, LLC (Data Breach) | USDC Southern District of Florida |
| Christie Business Holdings Company PC (Data Breach) | USDC Central District of Illinois |
| Colorado Dept. of Health Care Policy & Financing/IBM (Data Breach) | District Court, City and County of Denver, State of Colorado |
| Dakota Growers Pasta Company, Inc. (Food Mislabeling) | USDC District of Minnesota/District of New Jersey |
| Dell, Inc. (Data Breach) | USDC Western District of Texas |
| Filters Fast, LLC (Data Breach) | USDC Western District of Wisconsin |
| Golden Corral Corporation (Data Breach) (PEC) | USDC Eastern District of North Carolina |
| Hy-Vee, Inc. (Data Breach) | USDC Central District of Illinois |
| Intellihartx (Data Breach) (Executive Lead Counsel) | USDC Northern District of Ohio |
| Johns Hopkins Health System & Johns Hopkins University (Data Breach) (Interim Lead Counsel) | Circuit Court of Maryland for Baltimore City |
| Lansing Community College (Data Breach) (PSC) | USDC Western District of Michigan |
| LeafFilterNorth, LLC/LeafFilter North of Texas, LLC (Data Breach) | USDC Western District of Texas |
| Lime Crime, Inc. (Data Breach) | USDC Central District of California |
| Medical Review Institute of America, LLC (Data Breach) | USDC District of Utah |
| Mednax Services, Inc. (Data Breach) | USDC Southern District of Florida |
| MedQ, Inc. (Data Breach) | USDC Eastern District of Texas |
| Mercer University (Data Breach) | USDC Middle District of Georgia |
| MidFirst Bank and Midland Financial Co. (Data Breach) | USDC Western District of Oklahoma |
| Morris Hospital (Data Breach) | Circuit Court of the Thirteenth Judicial Circuit Grundy, County, Illinois |
| In re: Navvis & Company, LLC Data Breach Litigation (Data Breach) | USDC Eastern District of Missouri |
| OneTouchPoint (Data Breach) (PSC) | USDC Eastern District of Wisconsin |
| In Re: Orrick, Herrington & Sutcliffe Data Breach Litigation (Data Breach) (Interim Lead Counsel | USDC Northern District of California |
| Peachtree Orthopaedic Clinic, P.A. (Data Breach) | Superior Court of Forsyth County, State of Georgia |
| Physician's Business Office, Inc. (Data Breach) | In the Circuit Court of Wood County, West Virginia |
| PracticeMax (Data Breach) | USDC District of Arizona |
| Progressive Casualty Insurance (Data Breach) | USDC Northern District of Ohio |
| In re: QTC Commercial Services, LLC d/b/a IMX Medical Management Services, LLP Data Breach Litigation (Data Breach) | USDC Eastern District of Pennsylvania |
| Skidmore College (Data Breach) | USDC Northern District of New York |
| Smile Brands (Data Breach) | USDC Central District of California |
| Snap Finance (Data Breach) | USDC District of Utah |
| Solara Medical Supplies, LLC (Data Breach) | USDC Southern District of California |
| Sysco Corporation (Data Breach) (PSC) | USDC Southern District of Texas |
| TD Ameritrade, Inc. (Data Breach) | USDC District of Nebraska |
| TMX Finance Corporation Services, Inc. (Data Breach) (PSC) | USDC Southern District of Georgia |
| Wichita State University (Data Breach) | USDC District of Kansas |
| Yuma Regional Medical Center (Data Breach) | USDC District of Arizona |
| **SHAREHOLDER DERIVATIVE CASES** | |
| Abercrombie & Fitch Company | USDC Southern District of Ohio |
| American Superconductor Corporation | Superior Court, Commonwealth of Massachusetts |
| Antares Pharma, Inc. | USDC District of New Jersey |
| In Re: Archer-Daniels-Midland Company Derivative Litigation | USDC District of Delaware |
| Arrowhead Research Corporation | Superior Court, State of California, County of Los Angeles |
| Carrier Access Corporation | USDC District of Colorado |
| Catalina Marketing Corporation | Chancery Court of the State of Delaware |
| Cell Therapeutics, Inc. | USDC Western District of Washington |
| Computer Associates | USDC Eastern District of New York |
| Delcath Systems, Inc. | USDC Southern District of New York |
| Dendreon Corporation | USDC Western District of Washington |

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| | |
|---|---|
| Digital Turbine, Inc. | USDC Western District of Texas |
| Doral Financial Corporation | USDC Southern District of New York |
| Dynavax Technologies Corporation | Superior Court of the State of California; county of Alameda |
| First BanCorp. | USDC District of Puerto Rico |
| Flowers Foods, Inc. | USDC Middle District of Georgia |
| Genta, Inc. | USDC District of New Jersey |
| GMX Resources, Inc. | District Court of Oklahoma County, Oklahoma |
| Great Lakes Dredge & Dock Corporation | Circuit Court of Illinois, Dupage County Chancery Division |
| Host America Corporation | USDC District of Connecticut |
| Motricity Inc. | USDC Western District of Washington |
| NutraCea | Superior Court of Maricopa County, Arizona |
| Nuverra Environmental Solutions, Inc. | Superior Court of Maricopa County, Arizona |
| Nyfix, Inc. | USDC District of Connecticut |
| OCA, Inc. | USDC Eastern District of Louisiana |
| ONEOK, Inc. | District Court of Tulsa County, Oklahoma |
| PainCareHoldings, Inc. | USDC Middle District of Florida |
| Seitel, Inc. | USDC Southern District of Texas |
| Spectrum Pharmaceuticals, Inc. | USDC District of Nevada |
| The Spectranetics Corporation | USDC District of Colorado |
| ValueClick, Inc. | USDC Central District of California |
| Zix Corporation | USDC Northern District of Texas |
| **SECURITIES CLASS ACTIONS** | |
| Amyris, Inc. | USDC, Northern District of California |
| Bellicum Pharmaceuticals, Inc. | USDC Southern District of Texas |
| Broadwind Energy, Inc. | USDC Northern District of Illinois |
| China Valves Technology, Inc. | USDC Southern District of New York |
| Cryo-Cell International, Inc. | USDC Middle District of Florida |
| Delta Petroleum, Inc. | USDC District of Colorado |
| Direxion Shares ETF Trust | USDC Southern District of New York |
| Ener1, Inc. | USDC Southern District of New York |
| Exide Technologies | USDC Central District of California |
| Galena Biopharma, Inc. | USDC, District of New Jersey |
| Houston American Energy Corp. | USDC Southern District of Texas |
| Image Innovations Holdings, Inc. | USDC Southern District of New York |
| IZEA, Inc. | USDC Central District of California |
| Motive, Inc. | USDC Western District of Texas |
| Quest Energy Partners LP | USDC Western District of Oklahoma |
| Secure Computing Corporation | USDC Northern District of California |
| Superconductor Technologies, Inc. | USDC Central District of California |
| UTi Worldwide, Inc. | USDC Central District of California |
| Unistar Financial Service Corp. | USDC Northern District of Texas |
| **MDL PROCEEDINGS** | |
| In re: Anthem, Inc. (Data Breach–Participating Counsel) | USDC, Northern District of California |
| In re: Equifax, Inc. (Data Breach–Participating Counsel) | USDC Northern District of Georgia |
| In re: Farmers Insurance Co. | USDC Western District of Oklahoma |
| In re: Home Depot, Inc. (Executive Committee) | USDC Northern District of Georgia |
| In re: Mednax Services Inc. (Data Breach – Co-Lead Counsel) | USDC Southern District of Florida |
| In re: Premera Blue Cross (Data Breach–Participating Counsel) | USC, District of Oregon |
| In re: Samsung Electronics America, Inc. | USDC Western District of Oklahoma |
| **DEAL CASES (MERGERS)** | |
| Easylink Services International Corp. | Superior Court of Gwinnett County, Georgia |
| Genon Energy, Inc. | Chancery Court of the State of Delaware |
| Lawson Software, Inc. | Chancery Court of the State of Delaware |
| Network Engines, Inc. | Chancery Court of the State of Delaware |
| Paetec Holding Corp. Shareholder Litig. | Chancery Court of the State of Delaware |
| Williams Pipeline Partners, L.P. | District Court of Tulsa County, Oklahoma |
| Xeta Technologies, Inc. | District Court of Tulsa County, Oklahoma |
| **ERISA LITIGATION** | |
| Winn-Dixie Stores | USDC Middle District of Florida |
| | |
| | |

# **EXHIBIT 3**



## CHESTNUT CAMBRONNE FIRM RESUME

For over 50 years, Chestnut Cambronne PA has been representing clients in class action litigation both in the Twin Cities area and at a national level. Since its inception, Chestnut Cambronne has been engaged in complex litigation throughout the country and has successfully both prosecuted and defended class litigation addressing substantive legal questions in the fields of data security breaches, securities, ERISA, banking, antitrust, and consumer protection law. Representative class action cases in which the firm and its members have been involved with over the past several years include:

*Jones v. ESO Solutions, Inc. Data Breach Litig.*, No. 1:23-cv-015557 (W.D. Tex.). A pending class action against ESO Solutions, Inc., a Texas-based data and software company on behalf of current and former client, alleging negligence and    other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*In re Tift Regional Health Sys., Inc. Data Breach Litig.*, No. 2023cv0311 (Tift County, Georgia Sup. Court). A pending class action against Tift Regional Hospital, a Georgia-based hospital network on behalf of current and former patients, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*Kobor, et al., v. Skidmore College*, No. 1:23-cv-1392 (N.D. NY). A pending class action against Skidmore College on behalf of current and former employees and students, alleging negligence and other claims in a data security breach. Philip J. Krzeski was appointed as Interim Co-Lead Counsel.

*Edwards v. Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute*, Case No. 1:2023-cv-00172 (E.D. Tenn.). A pending class action against Memorial Heart Institute, a Tennessee-based hospital network on behalf of current and former patients, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*Owens-Brooks v. Dish Network Corp.*, Case No. 1:2023-cv-01168 (D. Colo.). A pending class action against Dish Network Corp., a cable service provider, on behalf of current and former employees, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co- Lead Counsel.

*In re R&B Corp. of Virginia d/b/a Credit Control Corp.*, Case No. 4:2023-cv-00066 (E.D. Va.). A pending class action against R&B Corporation of Virginia, a Virginia-based debt collector, on behalf of consumers, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co- Lead Counsel.

*In re Orthoalaska Data Breach Litigation*, Case No. 3:23-cv-00242-SLG (D. Ala.). A pending class action against Orthoalaska, LLC, an Alaska-based orthopedics based medical practice on behalf of current and former patients, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*In re Wasserstrom Holdings, Inc., Data Breach Litigation*, Case No. 3:23-cv-2424-MHW-EPD (S.D. Ohio). A pending class action against Wasserstrom Holdings, Inc., an Ohio-based restaurant supplier, alleging negligence and other claims in a data security breach. Philip J. Krzeski was appointed as Interim Co-Lead Counsel.

*In re: Group Health Plan Litigation*, Case No. 23-cv-00267-JWB-DJF (D. Minn.). A pending class action against Group Health Plain, a Minnesota-based healthcare network, alleging wiretapping claims stemming from a Facebook pixel. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*Rasmussen, et al., v. Uintah Health Care Basin*, 2:23-cv-0322-HCN-DBP (Dt. Ut.). A pending class action against healthcare network Uintah Health Care Basin, a Utah-based healthcare network, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed as Interim Co-Lead Counsel.

*Anderson v. Fortra LLC*, No. 23-cv-00533-SRN (D. Minn.). A pending class action on behalf of a putative class of consumers against Fortra LLC, a cybersecurity vendor, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Rodriguez v. Mena Regional Hospital Commission d/b/a Mena Regional Health System*, No. 2:23-cv-2002-PKH (W.D. Ark.). A pending class action on behalf of a medical

2

patients against Mena Regional hospital Commission, an Arkansas Healthcare Network alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Hale v. ARcare*, No. 3:22-cv-00117-BSM (E.D. Ark.). A pending class action on behalf of a putative class of consumers against ARcare, an Arkansas healthcare network, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Hightower v. Receivables Performance Management, LLC*, No. 2:22-cv-01683-RSM (W.D. Wash.). A pending class action on behalf of a putative class of consumers against Receivables Performance Management, LLC, a Washington-based debt collection company, alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Johnson v. Yuma Regional Medical Center*, No. 2:22-cv-01061-SMB (D. Ariz.). A pending class action on behalf of a putative class of consumers against Yuma Regional Medical Center, an Arizona healthcare network, and related entities alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*In Re: Pawn America Consumer Data Breach Litigation*, No. 21-cv-2544-PJS-HB (D. Minn.). A pending class action on behalf of a putative class of consumers against Pawn America and related entities alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*In Re: Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210-SRN-LIB (D. Minn.). A pending class action on behalf of a putative class of consumers against Netgain Technology alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Phillips v. Bay Bridge Administrators, LLC*, No. 1:23-cv-022 (W.D. Tex.). A pending class actin on behalf of a putative class of consumers against an insurance administrator alleging negligence and other claims in a data security breach. Philip J. Krzeski was court appointed as Executive Committee Counsel.

*Lutz v. Electromed, Inc.*, No. 21-cv-2198-SRN-DTS (D. Minn.). A pending class action on behalf of a putative class of consumers against Electromed alleging

negligence and other claims in a data security breach. Chestnut Cambronne is prosecuting the case with two additional plaintiffs' law firms.

*Baker v. Parkmobile, LLC,* No. 21-cv-2181-SCJ (N.D. Ga.). A pending class action on behalf of a putative class of consumers against Parkmobile, LLC alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed to the Interim Plaintiffs' Steering Committee.

*DeSue v. 20/20 Eye Care Network, Inc.,* No. 21-cv-61275-RAR (S.D. Fla.). A pending class action on behalf of a putative class of consumers against 20/20 Eye Care Network alleging negligence and other claims in a data security breach. Bryan L. Bleichner was count appointed as Interim Co-Lead Counsel.

*Garrett v. Herff Jones, LLC,* No. 21-cv-01329-TWP-DLP (S.D. Ind.). A pending class action on behalf of a putative class of consumers against Herff Jones alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*In re EyeMed Vision Care, LLC Data Security Breach Litigation,* No. 21-cv-00036-DRC (S.D. Ohio). A pending class action on behalf of a putative class of consumers against EyeMed alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*In re Luxottica of America, Inc. Data Security Breach Litigation,* No. 20-cv-00908-MRB (S.D. Ohio). A pending class action on behalf of a putative class of consumers against Luxottica alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed as Interim Co-Lead Counsel.

*Greenstate Credit Union v. Hy-Vee, Inc.,* No. 20-cv-00621-DSD-DTS (D. Minn.). A pending class action on behalf of a putative class of financial institutions against Hy-Vee alleging negligence and violations of the Minnesota Plastic Card Security Act in a data security breach. Bryan L. Bleichner currently serves as co-counsel.

*Village Bank v. Caribou Coffee Company, Inc.,* No. 19-cv-01640-JNE-HB (D. Minn.). A recently settled class action on behalf of a putative class of financial institutions against Hy-Vee alleging negligence and violations of the Minnesota Plastic Card Security Act in a data security breach. Bryan L. Bleichner serves as court appointed settlement class counsel.

*Walker v. Nautilus, Inc.*, No. 20-cv-3414-EAS-EPD (S.D. Ohio). A pending consumer protection class action against Nautilus, Inc. alleging Defendant materially misrepresented the horsepower produced by the electric motors in its treadmills. Chestnut Cambronne currently serves as Plaintiffs' counsel.

*In re DPP Beef Litig.*, No. 20-cv-1319-JRT/HB (D. Minn.). A pending class action on behalf of a putative class of direct purchasers against beef product producers alleging claims of price fixing. Chestnut Cambronne serves as Plaintiffs' Counsel.

*Alicia Schaeffer v. Life Time Fitness, Inc. et al.*, No. 27-cv-20-10513 (Minn. 2020). A pending class action on behalf of a putative class of group fitness instructors against Life Time Fitness, Inc. alleging Defendants refused to compensate Plaintiff and class members for work performed for their employer's benefit. Chestnut Cambronne currently serves as Plaintiffs' counsel.

*In re WaWa, Inc. Data Security Litig.*, No. 19-cv-6019-GEKP (E.D. Pa.). A pending class action on behalf of a putative class of financial institutions against WaWa, Inc. alleging negligence and other claims in a data security breach. Bryan L. Bleichner serves on the Financial Institution Track Defendant Discovery and ESI Committee

*Teeda Barclay v. Icon Health & Fitness, Inc., et al.*, No. 19-cv-02970-ECT-DTS (D. Minn.). A pending consumer protection class action against Icon Health & Fitness and NordicTrack alleging Defendants materially misrepresented the horsepower produced by the electric motors in its treadmills. Bryan L. Bleichner currently serves as Plaintiffs' counsel.

*In re Resideo Technologies, Inc. Securities Litig.*, No. 19-cv-02863-WMW-KMM (D. Minn.). A pending shareholder class action against Resideo and its directors and officers for failing to disclose material information about its spin-off from Honeywell. Chestnut Cambronne serves as liaison counsel on this matter.

*Delamarter v. Supercuts, Inc.*, No. 19-3158-DSD-TNL (D. Minn.). A pending class action on behalf of a putative class of consumers against Supercuts alleging violations of the Fair and Accurate Credit Transactions Act. Bryan L. Bleichner serves as Plaintiff's Counsel.

*Kenneth Peterson v. JBS USA Food Company Holdings, et al.*, No. 19-cv-1129-JRT-HB (D. Minn.). A pending class action on behalf of a putative class of indirect

purchasers against beef product producers alleging claims of price fixing. Chestnut Cambronne served as Plaintiffs' Counsel.

*In re: FedLoan Student Loan Servicing Litigation*, No. 2:18-md-02833-CDJ (E.D. Pa.). A pending class action on behalf of a putative class of student loan borrowers against FedLoan Servicing / Pennsylvania Higher Education Assistance Agency alleging consumer fraud violations and other claims. Bryan L. Bleichner was court appointed to the Executive Committee.

*ASEA/AFSCME Local 52 Health Benefits Trust v. St. Jude Medical, LLC, et al.*, No. 18-cv-02124-DSD-HB (D. Minn.). A class action on behalf of a putative class of third party health benefits payors against St. Jude Medical and Abbott Laboratories alleging product liability and other claims. Chestnut Cambronne served as Plaintiffs' Counsel.

*In Re Pork Antitrust Litigation*, No. 18-cv-1776-JRT-HB (D. Minn,). A pending class action on behalf of a putative class of direct purchasers against pork product producers alleging claims of price fixing. Chestnut Cambronne currently serves as Plaintiffs' Counsel.

*James Bruner, et al. v. Polaris Industries Inc. et al.*, No. 18-cv-00939-WMW-DTS (D. Minn.). A pending class action on behalf of a putative class of consumers against Polaris Industries alleging product liability claims. Chestnut Cambronne was court appointed as Plaintiffs' Liaison Counsel.

*In re: Equifax, Inc., Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.). A settled class action on behalf of a putative class of financial institutions against Equifax alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed to the Financial Institution Plaintiffs' Steering Committee.

*Marie Travis v. Navient Corp. et al.*, No. 17-cv-04885-JFB-GRB (E.D.N.Y.). A pending class action on behalf of a putative class of student loan borrowers against Navient Corp. alleging consumer fraud act violations and other claims. Bryan L. Bleichner serves as Plaintiffs' Counsel.

*Midwest Am. Fed. Credit Union v. Arby's Rest. Grp. Inc.*, No. 17-cv-00514-AT (N.D. Ga.). A pending class action on behalf of a putative class of financial institutions against Arby's alleging negligence and other claims in a data security breach. Bryan L. Bleichner was appointed to the Interim Plaintiffs' Executive Committee.

*Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.). A settled class action on behalf of a putative class of financial institutions against Eddie Bauer alleging negligence and other claims in a data security breach. Bryan L. Bleichner served as Plaintiff's counsel.

*Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102 (D. Colo.). A settled class action on behalf of a putative class of financial institutions against Chipotle alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed to Chair of the Executive Committee.

*First Choice Fed. Credit Union et al. v. The Wendy's Company et al.*, No. 2:16-cv-00506 (W.D. Pa.). An ongoing class action on behalf of a putative class of financial institutions against Wendy's alleging negligence and other claims in a data security breach. Bryan L. Bleichner was court appointed to the Executive Committee.

*Gordon v. Amadeus IT Group, S.A.*, No. 1:15-cv-05457 (S.D.N.Y. July 14, 2015). A resolved putative class action alleging collusion and anticompetitive behavior among the companies that provide the systems used by travel agents to link to airline flight and fare information known as global distribution systems (GDS). Chestnut Cambronne served as Plaintiffs' Counsel in this litigation.

*In re: Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617 (LHK) (N.D. Cal. March 13, 2015). A settled class action against Anthem alleging negligence and other claims in a data security breach affecting in excess of 80 million consumers. Chestnut Cambronne served as Plaintiffs' Counsel in the litigation.

*Gassoway v. Benchmark Energy Transport Services, Inc.*, (S.D. Tex. February 23, 2015). A certified and settled class action case alleging Benchmark Energy Transport Services deducted and withheld an undisclosed surcharge from trucking owner-operators in violation of Federal Regulations. Chestnut Cambronne served as co-lead counsel for the certified class.

*In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583 (TWT) (N.D. Ga.). This is an ongoing putative class action against The Home Depot alleging negligence and other claims in a data security breach affecting 56 million consumers and tens of thousands of financial institutions. Bryan L. Bleichner was court appointed to the Financial Institution Plaintiffs' Steering Committee.

*In re: Target Corporation Customer Data Security Breach Litigation*, No. 0:14-md-02522 (PAM/JJK) (D. Minn. December 26, 2013). This is a settled class action against Target Corporation alleging negligence and violations of the Minnesota Plastic Card Security Act in a data security breach affecting 70 million consumers and tens of thousands of financial institutions. Chestnut Cambronne served as Co-Lead Counsel for the Financial Institution Class and Coordinating Lead Counsel for Plaintiffs.

*Christian v. National Hockey League*, No. 0:14-md-02551 (SRN/JSM) (D. Minn. April 15, 2014) This is a settled putative class action against the National Hockey League (NHL) alleging that the NHL ignored the known risks of concussive injures and failed to safeguard its players. Chestnut Cambronne was court appointed to the Plaintiffs' Executive Committee.

*Puerta v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786 (ADM/TNL) (D. Minn. March 21, 2014). A settled shareholder class action against Tile Shop Holdings and its directors and officers for failing to disclose material information about a supplier relationship. Chestnut Cambronne served as liaison counsel on this matter.

*In re: Domestic Drywall Antitrust Litig.*, No. 2:13-md-2437; 939 F. Supp. 2d 1371 (E.D. Pa. 2013). This is an ongoing antitrust putative class action against domestic manufacturers of drywall alleging price-fixing. Chestnut Cambronne is acting as plaintiffs' counsel in this matter.

*Lucas v. SCANA Energy Marketing, Inc.*, No. 1:12-cv-02356 (SCJ) (N.D. Ga. Feb. 8, 2013. A settled consumer protection class action in which Chestnut Cambronne served as co-lead counsel.

*In re: Imprelis Herbicide Mktg., Sales Practices and Products Liability Litig.*, No. 2:11-md-02284 (GP) (E.D. Pa. Oct. 20, 2011). This is a settled products liability class action against the manufacturer of Imprelis Herbicide, DuPont. The class has recovered over $378 million to date.

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc*, No. 08-6324 (PAM/AJB) (D. Minn. 2009); 618 F. Supp. 1016 (D. Minn. 2009); 278 F.R.D. 454 (D. Minn. 2011). This is a settled securities fraud class action in which Chestnut Cambronne was lead and liaison counsel. The class recovered $80 million.

8

*In re: American Express Anti-Steering Rules Antitrust Litig. (No. II)*, MDL No. 2221, 764 F. Supp. 2d 1343 (E.D.N.Y. 2010). This is a settled class action alleging that Defendant American Express' policies prohibiting merchants from offering customers incentives to use a particular card or type of payment violated antitrust laws. The case is currently under appellate review before the United States Court of Appeals for the Second Circuit.

*Mooney v. Allianz Life Ins. Co. of North America*, No. 06-545 (ADM/FLN); 2010 WL 419962 (D. Minn. Jan. 29, 2010). This was a certified class action in which Chestnut Cambronne was co-lead counsel seeking damages of $2 billion. After a three-week trial, the jury concluded Allianz made false and misleading statements intentionally in violation of the statue, but did not award damages.

*In re United Healthcare, Inc. Shareholder Derivative Litig.*, 631 F.3d 913 (8th Cir. 2011), *affirming* 631 F. Supp. 2d 1151 (D. Minn. 2009). This is a settled shareholder derivative case involving the backdating of stock options. Chestnut Cambronne served as lead counsel and recovered on behalf of the company a settlement valued at $922 million. Today, it remains the largest recovery in a shareholder derivative case in United States history.

*San Francisco Health Plan v. McKesson Corp.*, No. 1:08-cv-10843 (D. Mass. May 20, 2008). A settled RICO and Clayton Act class action challenging the pricing of pharmaceutical drugs. The class recovered $82 million. Chestnut Cambronne represented Plaintiff Anoka County.

*In re MoneyGram Int'l, Inc. Securities Litig.*, No. 08-cv-883 (DSD/JJG) (D. Minn. July 22, 2008); 626 F. Supp. 2d 947 (D. Minn. 2009). This is a settled securities fraud class action in which Chestnut Cambronne was co-lead counsel and recovered $80 million for the class.

*Avritt v. Reliastar Life Ins. Co.*, No. 0:07-cv-01817 (JNE/JJG) (D. Minn. April 9, 2007). This is a settled class action that alleged Defendant defrauded consumers in the sale of its Fixed Annuities. Chestnut Cambronne served as local counsel and recovered $31 million for the class.

*In re: Air Cargo Shipping Services Antitrust Litig.*, No. 1:06-md-01775 (JG/VVP) (E.D.N.Y. June 27, 2006). This is a partially settled class action alleging a price-fixing conspiracy by dozens of international air cargo carriers. To date over $500 million has been recovered for the class.

*In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720, 398 F. Supp. 2d 1356 (E.D.N.Y. 2005). A settled class action alleging that the rules Defendants Visa and MasterCard impose upon merchants violate antitrust laws. The case is currently on appeal before the United States Court of Appeals for the Second Circuit. The current settlement value is in excess of $7.25 billion.

*In re Xcel Energy, Inc. Sec, Derivative & "ERISA" Litig*, 364 F. Supp. 980, 995-996 (D. Minn. 2005); *In re Xcel Energy Securities, Derivative & "ERISA" Litigation*, 286 F. Supp. 2d 1047 (D. Minn. 2003). This was a securities fraud class action in which Chestnut Cambronne was co-lead counsel. The class recovered $80 million.
*Cooper v. Miller, Johnson, Steichen & Kinnard*, No. 0:02-cv-01236 (RHK/AJB) (D. Minn. June 5, 2002) This is a settled securities fraud class action in which Chestnut Cambronne served as lead counsel. The class recovered $5.6 million.

*In Re E.W. Blanch Holdings, Inc. Securities Litig.*, No. 0:01-cv-00258 (JNE/JGL) (D. Minn. Feb. 12, 2001) This is a settled securities fraud class action in which Chestnut Cambronne served as lead counsel. The class recovered $20 million.

*In re Blue Cross Subscriber Litig.*, No. 19-C3-98-7780 (Minn. Dist. Ct. 1st Dist.) This was a consumer protection class action on behalf of Blue Cross subscribers. Over $41 million was recovered for Blue Cross policy holders. Chestnut Cambronne served as lead counsel.

*Alford v. Mego Mortgage Home Loan Owner Trust 1997-1; Mazur v. Empire Funding Home Loan Owner Trust 1997-1;* and *Banks, et al. v. FirstPlus Home Loan Trust 1996-2* (Minn. Dist. Ct. 4th Dist.). These are settled consumer-lending cases in which Chestnut Cambronne acted as co-lead counsel.

Chestnut Cambronne also has experience successfully defending class litigation.

*See, e.g., In re K-Tel,* 300 F.3d 881 (8th Cir. 2002); *Wylde v. Champps of New Brighton,* No. 10-cv-4953 (ADM/JJK) (D. Minn. 2011); *Johnson v. BP America, Inc.* No. 12-cv-00417 (RHK/JSM) (D. Minn. 2012).

Not only do the results obtained in the above cases attest to the skill and competence of Chestnut Cambronne lawyers in shareholder litigation, various courts have publicly commended Chestnut Cambronne for its efforts:

> Plaintiffs' co-lead counsel have significant experience in representing shareholders and shareholder classes in federal securities actions around the country and in this district in particular. Counsel-both the lawyers representing lead plaintiffs and defendants-conducted themselves in an exemplary manner. … Thus, the effort of counsel in efficiently bringing this case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved, and this factor supports the court's award of 25%.

*In re Xcel Energy, Inc. Sec, Derivative & "ERISA" Litig*, 364 F. Supp. 980, 995 (D. Minn. 2005).

# **EXHIBIT 4**



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> **- THE NEW YORK TIMES**

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

## $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

## $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

## $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

## $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

## $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

## $1 Billion Settlement

W.R. Grace & Co.

## $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

## $775 Million Settlement

Washington Public Power Supply System Securities Litigation

## $586 Million Settlement

In re: Initial Public Offering Securities Litigation

# LOCATIONS

## PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

## CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

## FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

## ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

## LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

## MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

## NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

## NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

## NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

## SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

## TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

## WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

## WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

## NETHERLANDS

## UNITED KINGDOM

