**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

PETER KOBOR, individually and on behalf       : CASE NO. 1:23-cv-01392-MAD-DJS
of all others similarly situated,             :
                                              :
      Plaintiff,                              :
                                              :
v.                                            :
                                              :
SKIDMORE COLLEGE,                             :
                                              :
      Defendant.                              :
                                              :
                                              :
                                              :

----------------------------------------------- : CASE NO. 1:23-cv-01409-MAD-DJS

MARY COGAN, individually and on behalf        :
of all others similarly situated,             :
                                              :
      Plaintiff,                              :
                                              :
v.                                            :
                                              :
SKIDMORE COLLEGE,                             :
                                              :
      Defendant.                              :
                                              :
                                              :
-----------------------------------------------------X

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**</u>
<u>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................iv

I.  Summary of Settlement ...................................................................................1

    A.  Settlement Class........................................................................................1

    B.  The Settlement Benefits ............................................................................2

        1.  Out-of-Pocket Expenses and Lost Time Reimbursement....................2

        2.  Credit Monitoring and Identity Protection............................................3

        3.  Ongoing Data Security Efforts and Enhancements ..............................3

    C.  Notice Plan................................................................................................3

II.  Argument .......................................................................................................7

    A.  Class Certification is Warranted ................................................................7

    B.  Legal Standard for Findal Approval ..........................................................7

    C.  The Settlement Meets the Rule 23(e) Final Approval Standards .............8

        1.  Plaintiffs and Class Counsel have adequately represented the Settlement Class......................................................................................................10

        2.  The Settlement was negotiated at arm's length ..................................11

        3.  The settlement claims process is straightforward and effective .........12

        4.  The Settlement treats class members equitably in relation to one another ..........13

        5.  The requested attorneys' fees are reasonable and will only be paid after the Effective Date ..................................................................................13

        6.  There are no side arguments that weigh against final approval..........13

    D.  The Settlement Provides Significant Relief to the Settlement Class Under Rule 23(e) as Demonstrated Through Analysis of the *Grinnell* Factors ...........................14

        1.  The relief provided by the  Settlement is significant, especially given the complexity, expense, and duration of the litigation .............................14

2.  The costs, risks, and delays of trial and appeal make the relief provided by the Settlement even more valuable ............................................................................15

3.  Stage of Proceedings ..............................................................................................19

4.  Defendant's Ability to Withstand a Greater Judgment .........................................19

5.  The overwhelmingly positive reaction of the Settlement Class warrants final approval .........................................................................................................20

6.  The reasonableness of the settlement amount in light of the best possible recovery and risks of litigation ............................................................................21

III. Notice Satisfies Due Process ........................................................................................22

IV. Conclusion .....................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

2015 WL 5093503 (E.D.N.Y. July 10, 2015) .............................................................. 10

*Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955 (N.D. Cal. Oct. 18, 2021) .............. 23

*Balestra v. ATBCOIN LLC*, 2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) .................................. 17

*Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001) ............................................. 7

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................ 7

*Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .............................. 18

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................... 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................ 7, 14

*City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................. 9

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................... 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................ 22

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................... 8

*Gordon v. Chipotle Mexican Grill, Inc.*, 2019 6972701 (D. Colo. Dec. 16, 2019) ..................... 15

*Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) ............................... 18

*Hall v Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399 (S.D.N.Y. 2009)................... 14

*Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................... 15

*Hightower v. Receivables Performance Mgmt., LLC*, No. 2:22-cv-01683-RSM, ECF No. 84 (W.D. Wash.) ...................................................................................... 6

*In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014)................................ 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) . 10

*In re AOL Time Warner, Inc.*, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................ 19

*In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91 (S.D.N.Y. 2016) .................................... 10

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................... 7

*In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR (M.D. Fla.) .............................. 17

*In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147 (S.D.N.Y. 2013)............................................ 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........ 17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439 (S.D.N.Y. 2004) ............. 7, 8, 11, 19

*In re GSE Bonds*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) .............................................. 15, 17

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012)............................................ 12

*In re Initial Public Offering Secs. Litig.* ("*In re IPO*"), 671 F. Supp. 2d 467 (S.D.N.Y. 2009)... 14

*In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ................................ 16

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 2022 WL 1396522 (D. Md. May 3, 2022) ............................................................................................. 17, 18

*In re Merrill Lynch Tyco Research Secs. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008) ..................... 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) ......................... 11

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1977) ................................... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................................ 9

*In re Prudential Inc. Secs. Ltd. P'ships Litig.*, 1995 WL 789907 (S.D.N.Y. Nov. 20, 1995) ...... 14

*In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........ 20

*In re USAA Data Security Litigation*, No. 7:21-cv-05813, ECF No. 103 (S.D.N.Y. May 21, 2025) ............................................................................................................ 20

*In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ......................... 16

*Karic v. Major Auto. Cos.*, 2016 WL 323673 (E.D.N.Y. 2016) ................................................... 11

*Kirby v. FIC Restaurants, Inc.*, 2020 WL 5791582 (N.D.N.Y. Sept. 28, 2020) ........................... 9

*Lowenschuss v. Bludorn*, 613 F.2d 18 (2d Cir. 1980) ................................................................. 16

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................... 20

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................... 16

*Milliken v. Bayer Heritage Federal Credit Union*, No. 5:24-cv-00057, ECF No. 35 (N.D. W. Va June 20, 2025) ................................................................................................... 22

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 11

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ........................................................................... 21

*Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) ........................................... 11

*Romero v. La Revise Assocs.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) ........................................... 20

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014) ............................ 20

*Shapiro v. JP Morgan Chase*, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2024) ............................. 15

*Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................... 11

*Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .... 15

*Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476 ............................................ 6

*Theus v. Brinker Int'l, Inc.*, 2025 WL 1786346 (M.D. Fla. June 27, 2025) ................................. 18

*Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003) .............................................. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................ 7, 8, 11

*Weber v. Gov't Emps, Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009) ................................................... 19

*Weisenberger v. Ameritas Mut. Holding Co.*, 2024 WL 3903550 (D. Neb. Aug. 21, 2024) ......... 6

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 20

**Other Authorities**

*4 NEWBERG ON CLASS ACTIONS*, § 11:48 (4th ed. 2002) ....................................... 21

*Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3* (2010) ............................................................... 22

**Rules**

FED. R. CIV Advisory Committee Notes to 2018 Amendments to Rule 23 .................................. 9

FED. R. CIV. P. 23(c)(2)(B) .................................................................. 22

FED. R. CIV. P. 23(e)(2) ................................................................. 7, 9

FED. R. CIV. P. 23(e)(2)(D) ................................................................. 13

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Peter Kobor and Mary Cogan ("Plaintiffs"), on behalf of themselves and all others similarly situated, through counsel, respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement.

This litigation arises from a ransomware attack suffered by Skidmore College ("Defendant" or "Skidmore") on or about February 15, 2023, that resulted in the unauthorized access to personally identifiable information ("PII") of Plaintiffs and Class Members, totaling approximately 12,143 impacted persons who are primarily current and former students or current and former employees of Defendant (the "Data Incident" or "Incident"). A detailed summary of the relevant background and procedural history is set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan (ECF No. 39), the Declaration of William B. Federman in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 39-2), Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 41), and the Declaration of Class Counsel in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 41-2) which Plaintiffs incorporate by reference.[1]

## I.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class consists of:

**"All persons who were sent written notification by Skidmore that their Private Information was potentially compromised as a result of the Incident discovered by Skidmore in February 2023."**

---

[1] Unless otherwise defined, all capitalized terms have the meaning set forth in the Settlement Agreement ("S.A."). *See* ECF No. 39-2.

*Id.* ¶1.25. The Class specifically excludes: (i) Skidmore, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge. *Id.*

###    B.    The Settlement Benefits

The settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) Credit Monitoring; (2) Expense reimbursement, including reimbursement for Documented Out-of-Pocket Expenses and Attested Lost Time; and (3) Improvements to Skidmore's data security environment. S.A., ¶¶ 2.1-2.4. The Settlement provides for both monetary and equitable relief. Skidmore has agreed to pay the claims of Settlement Class Members arising from the Data Incident with a cap of $3,500 for any individual with documented expenses or attested lost time. *Id.* ¶ 2.2. In addition, Skidmore has agreed to implement and maintain security-related changes to increase the protection of Settlement Class Members' PII in its custody and control going forward. *Id.* ¶ 2.4.

###    1.    Out-of-Pocket Expenses and Lost Time Reimbursement

All Settlement Class Members who submitted a Valid Claim for out-of-pocket expenses and lost time using the Claim Form, including necessary supporting documentation, are eligible for reimbursement of the following documented out-of-pocket expenses, not to exceed $3,500.00 per Settlement Class Member, that were incurred as a result of the Incident. S.A. ¶ 2.2. Settlement Class Members were required to document expenses for which reimbursement is sought, and/or attest to lost time incurred for up to four hours of lost time to be reimbursed at a rate of $20.00 per

hour. *Id.; see also id.* ¶ 2.2. Any additional lost time claimed required additional documentation. *Id.* ¶ 2.2.1.

### 2. Credit Monitoring and Identity Protection

In addition to being able to submit a claim for reimbursement of out-of-pocket expenses and lost time, all Settlement Class Members were eligible to receive two (2) years of one bureau credit monitoring. *Id.* ¶ 2.1.

### 3. Ongoing Data Security Efforts and Enhancements

In addition to the monetary benefits described above, the Settlement Agreement also acknowledges Skidmore's commitment to maintain certain enhancements and improvements to its security environment. *Id.* ¶ 2.4. These enhancements will protect Class Members' Private Information proactively for years to come.

### C. Notice Plan

On March 28, 2025, the Court appointed Simpluris, Inc. ("Simpluris") to administer the settlement. ECF No. 40. On September 6, 2024, pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C.A. § 1715, Simpluris completed a mailing that informed the appropriate state and federal Attorneys General about the Settlement. *See* Declaration of Anne-Marie Marra of Settlement Administrator Simpluris, Inc. in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Admin Decl."), ¶ 4. Pursuant to the Preliminary Approval Order, Simpluris formatted the Postcard and Long Form Notice, Claim Form and Exclusion Form to be sent by email or mail, as needed. *Id.*, ¶ 5. The Postcard Notice, Long Form Notice and Claim Form were formatted to be made available on the Settlement website. *Id.*

The Notices advised Settlement Class Members of their right to make a claim, request exclusion from the settlement, object to the settlement, or do nothing, and the implications of each

such action. *Id.*, ¶ 6. The Notices advised Settlement Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Settlement Class Members could obtain additional information. *Id.*

On April 2, 2025, Counsel for Defendant provided Simpluris with the Class List containing 12,143 known Settlement Class Members' names, and mailing addresses. *Id.*, ¶ 7. On April 8, 2025, Counsel for Defendant provided Simpluris with a supplemental Class List containing email addresses for 7,660 of the known Settlement Class Members. *Id.* Upon receipt of the Class List, Simpluris "scrubbed" the data to ensure it was in proper format for distributing the Notice via U.S. Mail. *Id.*, ¶ 8. In an effort to ensure that Notice would be delivered to Settlement Class Members, Simpluris compared the address data against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from NCOA. *Id.* After scrubbing the data, Simpluris removed 13 duplicative entries, resulting in a final list of 12,130 unique Settlement Class Members. *Id.*

On May 12, 2025, Simpluris emailed the Short Form Notice to 6,649 Settlement Class Members. *Id.*, ¶ 9. On May 19, 2025, Simpluris mailed the Postcard Notice to the 17 Class Members whose Email Notice was returned as undeliverable. *Id.* Also, on May 12, 2025, Simpluris emailed the Short Form Notice to 6,649 Settlement Class Members. *Id.*, ¶ 10. On May 19, 2025, Simpluris mailed the Postcard Notice to the 17 Class Members whose Email Notice was returned as undeliverable. *Id.*

As of July 25, 2025, 942 Postcard Notices were returned to Simpluris by the post office. *Id.*, ¶ 11. For the Postcard Notices returned without a forwarding address, Simpluris performed an advanced address search (*i.e.* skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id.* Simpluris used the Class Member's name and previous

address to locate a more current address. Of the 942 returned Postcard Notices, 831 Postcard Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS. *Id*. The remaining 111 Postcard Notices were undeliverable because no other address was available. *Id.*

As of July 25, 2025, 12,020 Settlement Class Members have received either an Email Notice or Postcard Notice, which has not been returned as undeliverable, resulting in 99.1% direct reach, however this number may change during the Claim filing period. *Id*., ¶ 12. Simpluris prepared and maintains a Settlement website, www.SkidmoreSettlement.com, that includes important dates and deadlines, and Settlement-related documents, such as the Settlement Agreement, Long Notice, Claim Form, the Preliminary Approval Order, Consolidated Class Action Complaint, and Class Counsel's application for attorneys' fees, expenses, and service awards for the Class Representatives. *Id*., ¶ 14. An online Claim Form module was also active during the Claim Period. An online Opt-Out module was also active prior to the Opt-Out deadline. *Id*. The website has been available to the public since May 9, 2025. *Id*. As of July 25, 2025, the website has been visited by 489 unique visitors with 1,531 page views. *Id*.

A settlement specific toll-free telephone number was included in the Email and Postcard Notice and on the Settlement Website for the purpose of allowing the Settlement Class Members to make inquiries regarding the Settlement. *Id*., ¶ 15. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. *Id*. Callers have the option to speak with a live call center representative during normal business hours. *Id*. The toll-free telephone number included in both forms of the Notice was (833) 296-0880. *Id*. This number is active and has been available to the public since May 8, 2025. *Id*. As of July 25, 2025, the settlement specific toll-free telephone number has received 12 phone calls, with 8 of those calls

routed to live agents. *Id*. Finally, on July 28, 2025, Simpluris sent a Reminder Email to 6,593 Class Members who had not responded to the Email Notice by submitting a claim form or a request for exclusion. *Id.*, ¶ 13.

The postmark deadline for Settlement Class Members to submit a request for exclusion ("Opt Out") from the proposed Settlement or to object to the proposed Settlement was July 11, 2025. *Id*., ¶ 16. As of July 25, 2025, Simpluris has received three (3) requests for exclusion from the proposed Settlement from Settlement Class Members. *Id*., ¶ 17. As of July 25, 2025. Simpluris has received zero (0) objections to the proposed Settlement from Settlement Class Members. *Id*., ¶ 18. The deadline to file a Claim form is August 11, 2025. *Id*., ¶ 19. As of July 25, 2025, Simpluris has received a total of 91 Claim Forms, representing 0.75% of the total Settlement Class who received direct notice. [2] *Id*., ¶ 18. Claim Form processing is ongoing and, as the deadline to file a Claim Form has not yet passed, it is expected that the total number of submitted and valid claims will increase. *See id*., ¶ 20.

---

[2] This claims rate is typical in the data breach context. *Weisenberger v. Ameritas Mut. Holding Co*., No. 4:21-CV-3156, 2024 WL 3903550, at *3 (D. Neb. Aug. 21, 2024) (finding parties efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims). "A response rate is relevant only secondarily to the examination of the notice that was provided in the context of the possible forms of nice reasonably available." *Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476, 497, *review denied sub nom. Barnes v. Sea Mar Cmty. Health Centers*, 549 P.3d 112 (2024) (Response rate of approximately 0.5 percent found sufficient where notice plan used known email and postal address as well as the use of a settlement website, toll free phone number, and Facebook and Instagram posts); *see Hightower v. Receivables Performance Mgmt., LLC*, No. 2:22-cv-01683-RSM, ECF No. 84 (W.D. Wash.) (finally approving settlement with claims rate of 0.65% claims rate).

## II.     ARGUMENT

### A.     Class Certification is Warranted

The Court provisionally certified the Settlement Class under Rule 23 at the preliminary approval stage. *See* ECF No. 40, ¶ 2. Since preliminary approval, nothing pertinent to class certification has substantively changed. Accordingly, the Court should certify the Rule 23 Class for settlement purposes at final approval. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

### B.     Legal Standard for Final Approval

Public policy favors the resolution of class actions through settlement. *See, e.g., Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 455 (S.D.N.Y. 2004). "[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013). In service of "the strong judicial policy in favor of settlements, particularly in the class action context," *Wal-Mart*, 396 F.3d at 116-17, a court may approve a class action settlement upon a showing that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

The courts in this Circuit also consider the complementary factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*") to assess the "substantive fairness of a settlement." *Moses*, 79 F.4th at 243. The *Grinnell* Factors are listed as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings, and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Not every factor must weigh in favor of settlement; "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). Applying these factors to the Settlement here demonstrates final approval of the Settlement is warranted.

### C.    The Settlement Meets the Rule 23(e) Final Approval Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any class action settlement. The court must "carefully scrutinize the settlement to ensure its fairness, adequacy, and reasonableness, and that it was not a product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). This evaluation requires the Court to consider "both the settlement's terms and the negotiating process leading to the settlement." *WalMart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005).

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014). Accordingly, when exercising its discretion to approve the Settlement, the Court should be "mindful of 'the strong judicial policy in favor of settlements.'" *Wal-Mart Stores*, 396 F.3d at 116 (citations omitted). "Absent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *City of Providence v. Aeropostale,*

*Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub. nom., Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Rule 23(e)(2) provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). Rule 23(e)(2)(A)-(B) focuses on procedural fairness, while Rule 23(e)(2)(C)-(D) focuses on the settlement's substantive fairness. *See Kirby v. FIC Restaurants, Inc.*, 2020 WL 5791582, at *2 (N.D.N.Y. Sept. 28, 2020).

    As demonstrated herein, the Settlement readily satisfies the Rule 23(e)(2) and *Grinnell* factors,[3] meets the favored public policy of resolving class action claims and warrants the Court's final approval.

---

[3] The factors set forth in Rule 23(e)(2) were intended "to add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also* Advisory Committee Notes to 2018 Amendments to Rule 23 (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals). Accordingly, Plaintiffs will discuss both the factors set forth in Rule 23(e)(2) and the non-duplicative *Grinnell* factors.

**1. Plaintiffs and Class Counsel have adequately represented the Settlement Class.**

In determining whether to approve a class action settlement, the court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "[T]he adequacy requirement 'entails inquiry into whether: (1) plaintiffs' interests are antagonistic to the interests of other members of the class and (2) plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation.'" *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016).

First, there are no conflicting interests that exist between Plaintiffs and Settlement Class Members; to the contrary, Plaintiffs are members of the proposed Settlement Class and were victims of the Incident whose Private Information was compromised as a result. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *34 (E.D.N.Y. Oct. 15, 2014) ("Even if there was a conflict [relating to the assignment of recovery rights] (and there is not), it would under no conceivable circumstances be so 'fundamental'" to cause class representatives to be inadequate), report and recommendation adopted, 2015 WL 5093503 (E.D.N.Y. July 10, 2015). Because Plaintiffs and Class Members both have a strong interest in obtaining the maximum recovery possible for the harm caused by Defendant, Plaintiffs' interests are inarguably aligned with the Class, as further demonstrated by their efforts in successfully prosecuting this matter. Thus, the interests of Plaintiffs and the Settlement Class are coextensive given that each Plaintiff, like each Settlement Class Member, has a strong interest in obtaining redress for the harm allegedly caused by Defendant.

Second, Class Counsel have extensive experience in class action litigation and data breach cases in particular. *See* ECF No. 39-2, Exs. 2-4 (Firm Resumes of Class Counsel). Further, Class Counsel put their experience to work in this case, investigating the data security incident, engaging

in informal discovery, negotiating a settlement, and moving for preliminary and final approval of the class action settlement. Class Counsels' efforts ultimately resulted in a successful resolution for the class. These efforts demonstrate Class Counsels' adequacy. *See, e.g.*, *Karic v. Major Auto. Cos*., No. 09 Civ. 5708, 2016 WL 323673 (E.D.N.Y. 2016); *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting the "extensive" experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co., 2014 WL 1224666*, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair).

### 2.  The Settlement was negotiated at arms-length.

Rule 23(e)(2)(B) further supports final approval because the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with data breach class action litigation and with the legal and factual issues in these cases. *See* ECF No. 39-1, pp. 10-12; *see also* ECF No. 39-2, Exs. 2-4 (Firm Resumes of Class Counsel).

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel . . . ." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litig. (Third) § 30.42 (1995)). Before discussing a potential settlement, the Parties completed and engaged in meaningful informal discovery, which allowed the Parties to adequately understand the claims, defenses, and risks of continued litigation. Therefore, the Settlement was negotiated at arms'-length with experienced data privacy counsel, is procedurally fair, and satisfies Fed. R. Civ. P. 23(e)(2)(B); *see In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "'great weight' … to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

Given Class Counsel's considerable prior experience in complex class action litigation involving data breach claims (among others), their knowledge of the strengths and weaknesses of Plaintiffs' claims asserted in this Action, their assessment of the Settlement Class's likelihood of recovery following trial and appeal, and their experience negotiating with Defendant, there is a strong basis to consider that the compromise reached here is fair and reasonable. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977), aff'd 117 F.3d 721 (2d Cir. 1997) (observing that "great weight" is given to the advice of experienced counsel)

### 3. The settlement claims process is straightforward and effective.

Under Fed. R. Civ. P. 23(e)(2)(C)(ii), the Court must review the method by which the Settlement distributes relief to the Settlement Class. A plan for allocating settlement proceeds, like the Settlement itself, should be approved if it is fair, reasonable, and adequate. *See, e.g., In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012). "Measuring the proposed relief may require evaluation of any proposed claims process." *See* Advisory Committee note to 2018 amendments. The Settlement provides relief to the Settlement Class Members through a straightforward claims process designed to be as convenient as possible. Settlement Class Members have received information about the Settlement benefits through the comprehensive, Court-approved Notice Program, as detailed below. To obtain these benefits, Settlement Class Members were required to submit a simple Claim Form via U.S. Mail or online. Settlement Class Members are not required to provide any additional paperwork unless they are seeking to recoup documented out of pocket losses. This factor further supports approval.

### 4.    The Settlement treats class members equitably relative to one another.

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. FED. R. CIV. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably, offering every member of the Class the option of the same Settlement benefits: repayment for documented losses up to $3,500.00 (including reimbursement for lost time up to $80.00) and credit monitoring for two years. Because all Settlement Class Members are treated the same relative to one another, Rule 23(e)(2)(D) favors approval.

### 5.    The requested attorneys' fees are reasonable and will only be paid after the Effective Date.

Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees, including the timing of payment. As set forth in Plaintiffs' Motion for Attorneys' Fees and Service Award and accompanying memorandum (ECF No. 41), Plaintiffs are petitioning the Court for $190,000.00 in attorneys' fees, inclusive of costs, and service awards of $2,000.00 for each Class Representative. At the time of submission, attorneys' fees totaled $169,326.90 or a 1.15 multiplier. *See* ECF No. 41-1 at 25. Class Counsel have performed additional work to date in monitoring the notice plan (including issuing reminder notice), answering class member inquiries, and moving for final approval. Class Counsel will supplement their lodestar and costs prior to the Final Approval hearing.

### 6.    There are no side agreements that weigh against final approval.

Rule 23(e)(2)(C)(iv) requires the Court to consider any side agreements that must be disclosed under Rule 23(e)(3). Here, there are no side agreements among the parties.

13

**D.    T**he Settlement Provides Significant Relief to the Settlement Class under Rule
23(e) as Demonstrated through Analysis of the *Grinnell* Factors.

**1.    The relief provided by the settlement is significant especially given the
complexity, expense, and duration of data breach litigation.**

The best indicator of the fairness of the Settlement is the significance of the result. Under
this Settlement, Settlement Class Members can elect to receive out-of-pocket losses of up to
$3,500.00 (including reimbursement for lost time up to $80.00) and credit monitoring services for
two years, *See* S.A., ¶¶ 2.1-2.3. Moreover, as part of the Settlement, Defendant has improved its
data security practices to protect Class Members' Private Information going forward. *Id.*, ¶ 2.4.

The Second Circuit has recognized that "[t]here is no reason, at least in theory, why a
satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent
of the potential recovery." *Grinnell*, 499 F.2d at 455 n.2. Consistent with that principle, courts
often approve class settlements even where the benefits represent "only a fraction of the potential
recovery." *See, e.g.*, *In re Initial Public Offering Secs. Litig.* ("*In re IPO*"), 671 F. Supp. 2d 467,
483-85 (S.D.N.Y. 2009) (approving settlement that provided 2% of defendants' maximum possible
liability and observing "the Second Circuit has held that . . . even a fraction of the potential does
not render a proposed settlement inadequate"); *see also In re Prudential Inc. Secs. Ltd. P'ships
Litig.*, MDL No. 1005, M-21-67, 1995 WL 789907 (S.D.N.Y. Nov. 20, 1995) (approving
settlement of between 1.6 and 5% of claimed damages); *In re Merrill Lynch Tyco Research Secs.
Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving settlement of 3% of estimated damages);
*Hall v Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 (S.D.N.Y. 2009) (approving
settlement of between 5 to 12% of maximum damages). Here, the Settlement comports with
Second Circuit authorities and will provide reasonable monetary relief, or security in the form of
credit monitoring, without further uncertainty or delay.

This factor is further supported by the inherent complexity of data breach litigation. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 6972701, at *1 (D. Colo. Dec. 16, 2019) (granting final approval to a class action settlement after observing that "[d]ata breach cases such as the instant case are particularly risky, expensive, and complex,…and they present significant challenges to plaintiffs at the class certification stage.]." While Plaintiffs believe that they would ultimately prevail, the Settlement eliminates all risks and will, if finally approved by the Court, provide substantial recovery for Class Members without the risk and delay of continued litigation

### 2. The costs, risks, and delay of trial and appeal make the relief provided by the Settlement even more valuable.

The relief provided by the Settlement is even more significant when considered against the substantial costs, risks, and delays of continued litigation. [4] *See* FED. R. CIV. P. 23(e)(2)(C)(i); *see also Grinnell*, 495 F.2d at 463 (explaining that courts should consider "the complexity, expense, and likely duration of the litigation"); *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action"); *Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a … class member was willing to assume all the risks of pursuing the actions through further litigation… the passage of time to introduce yet more

---

[4] In evaluating this factor, the Court's role is to "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re GSE Bonds*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019); *see also Shapiro v. JP Morgan Chase*, No. 11 Civ. 8331, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2024) (stating at final approval, the Court's role is not to "decide the merits of the case or resolve unsettled legal questions or to foresee with absolute certainty the outcome of the case" but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement.")

risks…and would, in light of the time value of money, make future recoveries less valuable than the current recovery.").

While Plaintiffs are confident in the merits of their claims and believe they would ultimately prevail at trial, the factual and legal issues in this Action are inherently complex and expensive to litigate. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023) ("This is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed"); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of nonrecovery" due to "still-developing law," this factor weighed in favor of approval).

In this case, Settlement Class Members will obtain relief that is concrete, guaranteed, and immediate, while the benefits from continued litigation would be delayed at best and of lesser value at worst. Given that the litigation had not progressed past the Rule 12 stage at the time of resolution, continued litigation would likely span years and be costly to the parties, further taxing judicial resources. The substantial risk and delay of continued litigation weighs in favor of approving the Settlement. *See, e.g., Lowenschuss v. Bludorn*, 613 F.2d 18, 19 (2d Cir. 1980) (settlement approved where further litigation would have been "expensive and protracted" with no guarantee of any relief to the class); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("[T]he more complex,

expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court.").

Moreover, had this case progressed towards class certification and summary judgment,[5] the Parties' experts would have continued to add to the cost and duration of the case, likely triggering a "battle of the experts." Expert discovery would likely have led to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this litigation and its focus on technical data security issues that would likely be unfamiliar to the average juror, this Action presents a significant level of risk and uncertainty from the outset.

Plaintiffs also faced risks in establishing damages. While Plaintiffs believe they would have been able to prove such damages, Defendant would nevertheless have at the class certification and summary judgment stages, as well as at trial.

The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. *See In re GSE Bonds*, 414 F. Supp. 3d 686 at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). Certifying a litigation class may raise complex legal and factual issues given the data breach involved. To emphasize this point, the Court need only look at two very high-profile data breach cases: *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR (M.D. Fla.) and *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost

---

[5] *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"); *Balestra v. ATBCOIN LLC*, No. 17-cv-1001, 2022 WL 950953, at *3 (S.D.N.Y. Mar. 29, 2022) (granting preliminary approval of class action settlement and finding the settlement amount within the range of approval considering the risks, including a costly and confusing "battle [] of the experts").

*Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand), *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time); *Theus*, 2025 WL 1786346, at *4.

In the face of these substantial risks, the Settlement represents a substantial recovery and it is in Class Counsel's judgment that while the claims are meritorious, there are substantial risks

attendant with prosecution of the claims. The existence of those risks fully supported entering into this Settlement and these same risks favor approval.

### 3. Stage of Proceedings.

Examining the stage of the proceedings at which the Settlement occurs is intended to assess "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc*., No. MDL 1500, O2 Civ. 5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also In re Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims."). This factor does not require extensive formal discovery, or indeed any formal discovery at all, "as long as '[counsel] have engaged in sufficient investigation … to enable the Court to 'intelligently make … an appraisal' of the settlement." *AOL*, 2006 WL 903236, at *10.

Prior to engaging in settlement discussions, the parties exchanged sufficient discovery to examine each side's position. *See* ECF No. 39-1, pp. 10-12. In doing so, the parties were able to fully engage in merits discussions and obtain the Settlement Agreement currently before the Court. *Id*.

### 4. Defendant's ability to withstand a greater judgment.

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps, Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Further,

"[c]ourts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted).

Here, although Skidmore is likely able to withstand a greater judgment, the financial obligations the proposed Settlement imposes on it are nonetheless substantial. This factor weighs in favor of final approval.

**5.  The overwhelmingly positive reaction of the Settlement Class warrants final approval.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Here, "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008). In fact, no objections have been filed and there are only three opt out requests, which indicates the Settlement was supported by those Settlement Class Members who reviewed it. That only a handful of Settlement Class Members have elected to opt out provides strong evidence of the Settlement's fairness. *See, e.g., Romero v. La Revise Assocs*., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (approving settlement with 1.2% opt out rate); *See Sakiko Fujiwara v. Sushi Yasuda Ltd*., 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (noting "the fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate") (citation omitted); *In re USAA Data Security Litigation*, No. 7:21-cv-05813, ECF No. 103 (S.D.N.Y. May 21, 2025) (approving 22,641 Class Member data breach settlement with only one opt-out).

Moreover, no Settlement Class Members have filed an objection. This is yet more evidence of the Settlement Class Members' overwhelmingly positive reaction to the Settlement and weighs heavily in favor of approval. See 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]")

The Settlement was negotiated at arm's length by Class Counsel and Plaintiffs who fulfilled their responsibilities under Rule 23. The Agreement provides substantial benefits to Settlement Class Members while avoiding risky, uncertain, and expensive continuing litigation that could have denied any relief to the Class. The Settlement Agreement is fair, reasonable, and adequate, thus satisfying the requirements of Rule 23(e)(2). Moreover, the Settlement is overwhelmingly supported by the Settlement Class Members, drawing not a single objection and minimal opt-out requests. Plaintiffs respectfully request that the Court grant final approval to the Settlement.

### 6. The reasonableness of the settlement amount in light of the best possible recovery and risks of litigation.

Finally, the eighth and ninth *Grinnell* factors also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). "The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Meredith Corp.*, 87 F. Supp. 3d at 665-66.

As explained *passim*, Data breach litigation is inherently complex, risky, and a relatively undeveloped area of the law. The relief afforded here enables Settlement Class Members to recover

documented out-of-pocket losses up to $3,500.00 (including $80.00 for lost time), credit monitoring, and protects Class Members' Private Information going forward. This result is well within the range of reasonable recovery. *See*, *e.g., Milliken v. Bayer Heritage Federal Credit Union*, No. 5:24-cv-00057, ECF No. 35 (N.D. W. Va June 20, 2025) (finally approving settlement with similar settlement terms for out-of-pocket loss, credit monitoring, and lost time).

## III.  NOTICE SATISFIES DUE PROCESS

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. FED. R. CIV. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(C)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Court already provisionally approved the Notice Plan proposed by Plaintiffs and Class Counsel, including the forms of Plaintiffs' Summary Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiffs' proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

The Notice Program as designed and implemented reached approximately 99.1% of the identified Settlement Class by direct notice. Admin. Decl. ¶ 12. That figure exceeds the

constitutional due process requirement in this Circuit. *See, e.g., Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (citation omitted). Finally, all forms of notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available. While the claims rate is low, it is well within the rates approved by other courts, and does not diminish the success of the Notice Program, which reached approximately 99.1 % of the Settlement Class through diverse methods of notice. The Court should therefore find that the Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process requirements.

## IV.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant benefits in the form of monetary compensation, credit monitoring, and equitable relief. Based on the above reasons, Plaintiffs respectfully request that the Court enter an order granting final approval to the Settlement: (a) certifying the Settlement Class; (b) appointing Peter Kobor and Mary Cogan as Settlement Class Representatives; (c) appointing William B. Federman of Federman & Sherwood, Philip J. Krzeski of Chestnut Cambronne PA, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; and (d) awarding $190,000.00 as combined attorneys' and reimbursement of expenses, and; approving Service Awards of $2,000.00 each ($4,000.00 total) for the Class Representatives.

Dated: July 28, 2025

Respectfully submitted,

*/s/ Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
Philip J. Krzeski
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: 612.339.7300
Fax: 612.336.2940
*pkrzeski@chestnutcambronne.com*

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: 405.235.1560
*wbf@federmanlaw.com*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: 858.209.6941
*jnelson@milberg.com*

Randi Kassan
100 Garden City Plaza
Garden City, NY 11530
Telephone: 212.594.5300
*rkassan@milberg.com*

***Counsel for Plaintiffs and the Settlement Class***